404 A.2d 1343

**Anna HEVENER, John Jaskolski, Marion Jaskolski, and Jacqueline Jaskolski and Joseph Jaskolski, minors by their parents and natural guardians, John Jaskolski and Marion Jaskolski, and John Jaskolski and Marion Jaskolski in their own right**

**v.**

**James REILLY, Jr.**

**Appeal of Anna Hevener, John Jaskolski, Marion Jaskolski, and Joseph Jaskolski, minor, by his parents and natural guardians, John Jaskolski and Marion Jaskolski.**

Superior Court of Pennsylvania.

Argued Sept. 11, 1978.

Decided May 25, 1979.

388

Mitchell H. Klevan, Philadelphia, for appellants.

Thomas G. Mundhenk, Doylestown, for appellee.

Before CERCONE, SPAETH and LIPEZ, JJ.

SPAETH, Judge:

This is an appeal from an order granting a new trial to one of five plaintiffs but refusing to grant a new trial to appellants as the other four plaintiffs. The issue on this appeal is whether appellants are entitled to a new trial because of the alleged inadequacy and inconsistency of the verdicts.

On August 25, 1969, John Jaskolski was driving his automobile along Route 1 in Penndel. With him were his wife Marion, his minor son Joseph, his minor daughter Jacqueline, and his mother-in-law Anna Hevener. While the Jaskolski automobile was stopped in traffic it was struck in the rear by appellee's automobile. The occupants of the Jaskolski automobile were taken to Lower Bucks Hospital. After being treated and examined there, they were released and told to see their own physician.

The next day they went to see Dr. Clare Hodge. Dr. Hodge examined the Jaskolskis and Mrs. Hevener. Mr. Jaskolski was diagnosed as having suffered whiplash injuries of the cervical, dorsal, and lumbar regions of the spine. These injuries caused him pain in his neck and in the upper and lower parts of his back. Dr. Hodge treated these injuries with anti-inflammatory agents, muscle relaxants, and pain medications. The pain allegedly caused Mr. Jaskolski to miss three weeks of work, with a consequent loss of wages of $462. The medical expenses incurred by Mr. Jaskolski for his injuries totalled $158.25 for medication, hospital charges, and Dr. Hodge's treatment.

Mrs. Jaskolski was diagnosed as having sustained contusions of the spine, abdominal wall, bladder, pelvis, and left ankle, along with a sprain of her left ankle. She also suffered traumatic paralytic ileitis and traumatic menorphagia. She testified that in addition to vaginal bleeding and acute loss of bowel function, she experienced pain on urinating and pain in her back and neck. Treatment of her injuries required that she be hospitalized. She was admitted to St. Joseph Hospital on August 28, 1969, and remained there until September 10. She was in cervical traction during her entire stay in the hospital and in pelvic traction for part of her stay.[1] She continued treatments with Dr. Hodge after leaving the hospital but stopped going to his

---

1. At some time during her stay in the hospital, Mrs. Jaskolski was in both cervical and pelvic traction simultaneously. Because of the great discomfort she experienced from this simultaneous treatment, the pelvic traction was soon discontinued and she remained in cervical traction alone for the balance of her hospitalization.

office in 1971. She testified that she still experienced severe headaches and had had bowel and urinary problems since the accident. The medical expenses incurred by Mr. Jaskolski on behalf of his wife were $480.00 for treatment by Dr. Hodge, $216.64 for medication, $597.00 for hospitalization at St. Joseph's Hospital, and $29.00 for examination and treatment at Lower Bucks Hospital.

Joseph Jaskolski, the son, who was only one year old at the time of the accident, suffered some superficial abrasions to both of his knees. Dr. Hodge examined him and ordered that a local ointment be applied. The medical expenses allegedly incurred by Mr. Jaskolski on behalf of Joseph were $15.43 for medication, $8.00 for examination at Lower Bucks Hospital, and $25.00 for treatment by Dr. Hodge. Jacqueline Jaskolski, the daughter, was four years old at the time of the accident and suffered abrasions of her left cheek and right knee. Dr. Hodge treated her and testified that she would have a small permanent scar on her left cheek caused by a puncture wound received from a piece of glass. The medical expenses incurred by Mr. Jaskolski on behalf of Jacqueline were $25.00 for treatment by Dr. Hodge and $20.00 for examination and treatment at Lower Bucks Hospital.

Anna Hevener, the mother-in-law, was diagnosed as having suffered a severe sprain of the right knee with hemorthrosis, a severe sprain of the right wrist, a contusion of the right forearm and elbow, and acute back strain with bilateral sciatica. X-rays taken at Lower Bucks Hospital had originally indicated an undisplaced fracture of the right patella, but further examination by Dr. Hodge and additional X-rays obtained at St. Joseph's Hospital failed to confirm the presence of any fracture. She refused Dr. Hodge's advice that she enter the hospital but regularly visited his office for examinations and treatment. On some of these occasions the knee had to be drained of excess fluid. She stopped seeing Dr. Hodge after February 26, 1971. The medical expenses she incurred were $380.00 for treatment by Dr. Hodge, $18.00 for an examination at Lower Bucks Hos-

pital, $100.00 for examination and X-rays at St. Joseph's Hospital, and $114.22 for medications. She testified that she was unable to work for five weeks after the accident and claimed lost wages of $450.00. There was also testimony to the effect that because of the injuries incurred, she was forced to retire early and lost some $6,963.24 in extra earnings.

Appellee did not contest liability and presented no witnesses on his own behalf with respect to the damage claims.[2] He did dispute the reasonableness and necessity of Dr. Hodge's charges, however. He also disputed the necessity of Mrs. Hevener's forced retirement.

The jury returned verdicts for Mr. Jaskolski, Mrs. Jaskolski, and Anna Hevener, but against Joseph and Jacqueline Jaskolski. The verdict for Mr. Jaskolski was $1,600, for Mrs. Jaskolski, $750, and for Mrs. Hevener, $1,300. Upon questioning by the trial judge, the jury explained that the $750 awarded Mrs. Jaskolski was solely for her personal injuries and that the $1,600 awarded Mr. Jaskolski was for his family's medical expenses and his own personal injuries.[3]

2. Appellee did call one of the police officers who investigated the accident and attempted through the officer's testimony to prove that Mrs. Hevener was not a passenger in the Jaskolski automobile at the time of the accident. It is evident that the jury was not persuaded, for it returned a verdict in Mrs. Hevener's favor.

3. There was some problem with respect to the court's charge with respect to computing damages. In instructing the jury at the close of the testimony, the court said that the Jaskolski family medical expenses should be awarded if at all to Mr. Jaskolski alone since he was the family breadwinner and had paid the medical bills. The court also said that Mrs. Jaskolski and Joseph and Jacqueline Jaskolski should only receive an award for their personal injuries not including the medical expenses paid on their behalf by Mr. Jaskolski. After the jury had deliberated for some time, they sent a message to the court in which they indicated that they had reached a decision as to some plaintiffs but not as to the others. With counsels' permission the court repeated its instruction concerning the separate nature of the awards and the fact that Mr. Jaskolski alone could receive an award covering his, his wife's, and his children's medical expenses. The court suggested to the jury, however, that if it were easier, they might make individual awards for the medical expenses to each of the Jaskolski plaintiffs, and that if they did, the court would then later mold the verdicts. The jury did not follow this suggestion and returned a verdict in accordance with the original instructions.

Mrs. Hevener's award represented payment for her personal injuries, medical expenses and loss of wages.

In their motions for new trial plaintiffs argued that the verdicts were inadequate and inconsistent. The lower court refused to disturb the verdicts except that it held that Jacqueline Jaskolski was entitled to a new trial because of the failure of the jury to award any damages for her "undisputed cheek injuries". Lower Court Opinion at 5.[4]

In *Coleman v. Pittsburgh Coal Co.*, 158 Pa.Super. 81, 43 A.2d 540 (1945), this court set forth the standard for determining whether a new trial should be granted upon a claim that a verdict was inadequate: "Where the trial court *grants* a new trial on the ground of inadequacy the appellate courts will not interfere in the absence of a gross abuse of discretion . . . . When the trial court *refuses* relief against an allegedly inadequate verdict the appellate court *will exercise even greater caution in reviewing* its action." *Id.*, 158 Pa.Super. at 85, 43 A.2d at 542; *accord Black v. Ritchey*, 432 Pa. 366, 248 A.2d 771 (1968); *Thompson v. Iannuzzi*, 403 Pa. 329, 169 A.2d 777 (1961); *Paustenbaugh v. Ward Baking Co.*, 374 Pa. 418, 97 A.2d 816 (1953); *Bronchak v. Rebmann*, 263 Pa.Super. 136, 397 A 2d 438 (1979); *Austin v. Harnish*, 227 Pa.Super. 199, 323 A.2d 871 (1974); *Cohen v. Food Fair Stores Inc.*, 190 Pa.Super. 620, 155 A.2d 441 (1959). "[T]he function of determining whether a jury's verdict is arbitrary and capricious lies with the trial court, and its decision will not be set aside in the absence of clear error of law or palpable abuse of discretion." *Bronchak v. Rebmann, supra*, 263 Pa.Super. at 140, 397 A.2d at 440. While the appellate court will review the entire record to determine whether an inadequate and unjust verdict has occurred, *Prince v. Adams*, 229 Pa.Super. 150, 324 A.2d 358 (1974), it is "justified in declaring the lower court guilty of such an abuse of discretion only if [it is] clearly convinced by the record that the jury was influenced by partiality or some misconception of the law or the evidence." *Gottlob v. Hillegas*, 195 Pa.Super. 453, 457, 171 A.2d 868, 870–871 (1961).

4. Appellee has not appealed the court's order awarding Jacqueline Jaskolski a new trial.

In accordance with these principles, this court has declined to reverse the trial court's refusal to overturn jury verdicts on the ground of inadequacy where the damages awarded were substantial and bore a reasonable relation to the damages proved. *See Bronchak v. Rebmann, supra* (collecting cases); *Austin v. Harnish, supra* (jury verdict covered proved medical expenses). We have also declined to reverse the trial court's refusal to grant a new trial both in cases where the testimony as to the extent of the damages was disputed and in cases where the issue of liability was unclear and the amount awarded was a compromise verdict. *See Black v. Ritchey, supra* (compromise verdict); *Rogers v. Hammett*, 229 Pa.Super. 6, 323 A.2d 394 (1974) (plaintiff's witnesses contradicted each other with respect to extent of damages); *Lesoon v. Yellow Cab Company of Pittsburgh*, 195 Pa.Super. 470, 171 A.2d 877 (1961) (verdict demonstrated jury disbelieved plaintiff's doctors and believed defendant's doctors).

It is equally true, however, that verdicts upheld by the trial court will be overturned on appeal where they are clearly inadequate or inconsistent, for "appellate courts do not abdicate their powers of review to see whether or not the denial of a new trial constituted an injustice or clear abuse of discretion and will act where such exists." *Hose v. Hake*, 412 Pa. 10, 14, 192 A.2d 339, 341 (1963). Thus in *Hose* an award of $3,500 where the plaintiff had suffered a broken nose, facial lacerations, abdominal lacerations, and required a bone graft operation and an operation to remove a portion of her damaged pancreas, was overturned as grossly inadequate. *See Thompson v. Iannuzzi, supra* (jury's failure to award for pain and suffering for fractured coccyx held inconsistent with verdict awarding medical expenses for the injury); *Pascarella v. Pittsburgh Rwys. Co.*, 389 Pa. 8, 131 A.2d 445 (1957) (failure to award for pain and suffering); *Idzojtic v. Catalucci*, 222 Pa.Super. 47, 292 A.2d 464 (1972) (award of $300 to minor for pain and suffering incurred from a broken leg held inadequate).

■ We agree with the lower court as regards Jacqueline Jaskolski. The jury's verdict against her cannot be considered a compromise, for there was no dispute as to appellee's liability to compensate her for her injuries. By awarding her nothing the jury denied her any recovery for her permanent scar and for her pain and suffering—items "inextricably interwoven in the pattern of liability." *Pascarella v. Pittsburgh Rwys. Co., supra,* 389 Pa. at 13, 131 A.2d at 447. A similar observation, however, may be made as regards the verdict against Joseph Jaskolski. While it is true that his injuries were evidently very slight, still, there was no issue regarding appellee's liability to him.

■ In addition, our review of the record discloses that the verdict for Mrs. Jaskolski was clearly inadequate. As has been stated, the evidence indicated that she experienced vaginal bleeding, painful loss of bowel function and injuries to her neck, back, pelvis, and ankle, and that she spent two weeks in the hospital in traction for both her back and her pelvis. Given this evidence, our conscience is shocked by an award of $750.

■ The award of $1,600 to Mr. Jaskolski is not shocking, but we do find it questionable. The award barely covered the medical expenses he incurred on behalf of himself and his wife and children; it gave him very little for his own personal injuries and little or nothing for his alleged wage losses. The award of $1,300 to Anna Hevener is also questionable, for it gave her little for her pain and suffering and nothing for her alleged loss of earnings. In a normal case these awards would quite possibly not be disturbed, for they might be attributed to the fact that the jury chose not to believe the testimony as to the extent of the damages or the reasonableness of the expenses. *See Lesoon v. Yellow Cab Company of Pittsburgh, supra.* But this is not a normal case. Of five verdicts, two (the verdicts against Jacqueline and Joseph) represent a refusal to give any recovery at all to persons clearly entitled to at least some recovery, one (Mrs. Jaskolski's) is shockingly inadequate, and two are questionable. In these circumstances we can have no confidence in the fairness of the jury's deliberations.

The order of the lower court is reversed and the case is remanded for a new trial as to damages only.

CERCONE, President Judge, concurs in result.