422 A.2d 664

**Jane MUELLER and Her Husband Bernard Mueller, Appellants,**

v.

**John W. BRANDON and Mark D. Brandon.**

Superior Court of Pennsylvania.

Argued April 15, 1980.

Filed Nov. 14, 1980.

---

38

Donald P. Monti, Pittsburgh, for appellants.

Michael W. Burns, Pittsburgh, for appellees.

Before CAVANAUGH, HOFFMAN and VAN der VOORT, JJ.

CAVANAUGH, Judge:

This is an appeal from the trial court's refusal to grant a new trial on the ground of inadequacy of the verdict. Ap-

pellant Jane Mueller received personal injuries in a motor vehicle collision which occurred on May 27, 1977 in Hampton Township, Allegheny County. Since the medical and wage losses were covered by no–fault insurance, and items of property damage and expenses were uncontested,[1] the sole issue in dispute before the jury was the issue of pain and suffering consequent upon her injuries. The jury returned a verdict in the amount of $3,000.00 for Jane Mueller and $200.00 for her husband, Bernard Mueller for loss of consortium. Since the verdict for Mrs. Mueller included stipulated or uncontested damages in the amount of $2,337.00, the award for pain and suffering amounted to $663.00. At trial the attorney for the appellee made a concession of liability and therefore the evidence before the jury related only to the injuries suffered by Mrs. Mueller. The evidence consisted of the testimony of Mr. and Mrs. Mueller and the video-tape depositions of the appellant's physicians, Doctors Sangrujee and Schein. There was substantially no dispute as to the injuries suffered. Mrs. Mueller testified that at the time of the accident she was thrown up against the windshield of her car, that she "went out" and then when she came to she realized that blood was running over her clothes. Her husband came upon the scene and with the assistance of a police officer freed her ankle which was wedged between the clutch and brake of the car. Mrs. Mueller was taken to North Hills Passavant Hospital where she spent three days.

Doctor Sangrujee, an orthopedic surgeon, testified that he diagnosed an intra–articular fracture of the median malleolus of the left ankle, cerebral concussion and contusion of the knees. He applied a nonwalking cast to the left leg and admitted the patient for observation. He stated that he removed a second cast on July 9th, but that the patient was still disabled from her work for two months thereafter.

1. The three other items of damage were: The property damage to the vehicle; a transportation expense; and a household expense. In concluding his charge as to damages for Mrs. Mueller the court stated: "So you should make an award to her for these out-of-pocket expenditures plus what you award for pain, suffering and inconvenience. These should be reflected, however, in a single lump sum."

Appellant testified as to her pain, aches and soreness. She stated that she had an area of her forehead from which was gouged out half of her left eyebrow. She was out of work from her job as a waitress from the day of the accident, May 27, until September 20, 1976. When the cast was removed, Mrs. Mueller submitted to surgery for a fractured nose which she also suffered in the accident. The procedure was to realign the nasal bones. This is done by making an incision, rebreaking the bones and repositioning them. This cosmetic surgery was performed by Doctor Schein, again, during a five-day admission to North Hills Passavant Hospital. Her eyebrow grew back, but she stated that she still has a slight scar on her forehead. The bandage from the nose operation remained in place for six weeks post operative.

The standard for determining if a verdict is inadequate so as to merit a new trial has been stated by our courts:

... As a rule, a verdict in an action for a personal tort may be set aside as inadequate when, and only when, it is so inadequate as to indicate passion, prejudice, partiality, or corruption, or that the jury disregarded the instructions of the court, or in some instances, where there was a vital misapprehension or mistake on the part of the jury, or where it clearly appears from the uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff, or, according to some of the cases, where, otherwise, there has been an evident failure of justice to the plaintiff, or where the award is so inadequate that it should not be permitted to stand. Generally, a verdict will not be disturbed merely on account of the smallness of the damages awarded or because the reviewing court would have awarded more.

*Morris v. Peckyno*, 202 Pa.Super. 490, 492, 198 A.2d 396, 397 (1964). *See also Rhoades v. Wolf*, 207 Pa.Super. 104, 215 A.2d 332 (1965); *Poltorak v. Sandy*, 236 Pa.Super. 355, 345 A.2d 201 (1975) (Hoffman, J. dissenting).

Since under our system of jurisprudence our courts in most cases have no way of knowing how or why a jury

reached their verdict in a given case, the presence of passion, prejudice, partiality or corruption on the part of the jury, or whether they disregarded instructions, acted under misapprehension or mistake can only be a matter of surmise by a reviewing court. The test in the last analysis must simply be whether the award when scrutinized under the law and indisputable facts of the case at hand is so inadequate that it should not be permitted to stand. In *Elza v. Chovan*, 396 Pa. 112, 118, 152 A.2d 238, 241 (1959), Justice Bok, speaking of the test for granting a new trial on the ground of inadequacy, stated, ". . . [T]he injustice of the verdict should stand forth like a beacon."

In order to determine if the verdict is inadequate we must review the entire record to determine whether an injustice has occurred. *Elza v. Chovan, supra; Prince v. Adams*, 229 Pa.Super. 150, 324 A.2d 358 (1974). *Hevener v. Reilly*, 266 Pa.Super. 386, 404 A.2d 1343 (1979).

■ Finally, we recognize that our scope of review as an appellate court is limited, especially when the trial court has refused a new trial on the ground of inadequacy:

> Where the trial court *grants* a new trial on the ground of inadequacy the appellate courts will not interfere in the absence of a gross abuse of discretion. . . . When the trial court *refuses* relief against an allegedly inadequate verdict the appellate court *will exercise* even greater caution in reviewing its action. (Emphasis in the original).

*Paustenbaugh v. Ward Baking Co.*, 374 Pa. 418, 420–21, 97 A.2d 816, 818 (1953). *Accord Hevener v. Reilly, supra; Bronchak v. Rebmann*, 263 Pa.Super. 136, 140, 397 A.2d 438, 440 (1979).

■ Nonetheless, we are convinced that the grant of a new trial is warranted in this case. While the trial court refused to grant a new trial it did characterize the verdict as "extremely low." The court cited *Bronchak v. Rebmann, supra*, as authority for refusal of a new trial. *Bronchak* correctly states the rule that the jury, having seen and heard the witnesses "was not required to accept everything or

anything the plaintiff and her doctor said, even if their testimony was uncontradicted" (citing cases), *Bronchak, supra*, 263 Pa.Super. at 140, 397 A.2d at 440. However, in that case there was a serious medical dispute as to the extent of injury as well as an issue of whether the condition preexisted the trauma. In fact, after reviewing similar cases the court concluded that:

> . . . In all these cases, this Court refused to reverse trial courts which had denied motions for new trials because juries could have concluded logically and within bounds of common sense and reason either that plaintiffs had sustained no injuries or that the injuries complained of had not been caused by negligent acts of the defendants. See also: *Rogers v. Hammett*, 229 Pa.Super. 6, 323 A.2d 394 (1974); *Boyd v. Hertz Corporation*, 219 Pa.Super. 488, 281 A.2d 679 (1971); *Steiner v. Ostroff*, 197 Pa.Super. 461, 178 A.2d 799 (1962).

263 Pa.Super. at 141, 397 A.2d at 440.

In the instant case, however, there was no suggestion that the appellant's injuries were caused or affected by any preexisting conditions. There was no contest as to the nature and extent of the injuries and in fact appellee offered no evidence whatsoever. The nature of the basic injuries, fractures of the ankle and nose, were indisputable and objectively demonstrable. No jury is free to conclude that the presence of a nonwalking ankle cast for four weeks or undergoing nasal surgery do not necessarily involve substantial pain, suffering and inconvenience.

Moreover, this case was one of conceded liability and therefore there is no basis for a compromise verdict based on contested liability. *See Boyd v. Hertz Corporation*, 219 Pa.Super. 488, 281 A.2d 679 (1971); *Elza v. Chovan, supra.*

Finally, we recognize that consortium and pain and suffering are elements of damage which have no market value, and that the amounts to be awarded for these items are particularly for the common sense and sound judgment of the jury. Despite this fact, and while we concede that the verdict here represents something more than a trivialization

of appellant's claim, we cannot conclude that the award when scrutinized, as it must be, by contemporary economic standards is anything more than inadequate.

Therefore, viewing the evidence which was uncontradicted and which could not be fairly compromised we conclude that the verdict of $663.00 for pain and suffering is inadequate and that a new trial must be granted. Having decided that the jury inadequately assessed the severity of wife–appellant's pain and suffering it follows that the verdict for loss of consortium should also be set aside, since under the circumstances it cannot be said that the jury properly evaluated the "aid, assistance and comfort and society the wife would be expected to render to, or bestow upon, her husband"[2] but for her injuries.

Reversed.

**2.** *Quinn v. Pittsburgh*, 243 Pa. 521, 90 A. 353 (1914).