555 A.2d 1362

Clifford B. Hill, Jr., Appellant *v.* Commonwealth of Pennsylvania, Bureau of Corrections, Appellee.

Argued December 15, 1988, before Judges CRAIG and BARRY, and Senior Judge NARICK, sitting as a panel of three.

*Jerome J. Reitano*, for appellant.

*J. Matthew Wolfe*, Deputy Attorney General, with him, *LeRoy S. Zimmerman*, Attorney General, for appellee.

OPINION BY JUDGE CRAIG, March 15, 1989:

Clifford B. Hill, Jr. appeals from an order of the Court of Common Pleas of Montgomery County that denied Hill's motion for a new trial on the grounds of inadequacy of damages after a jury rendered a verdict in his favor in his negligence suit against the Bureau of Corrections (bureau) for personal injuries.

The issue is whether the trial judge abused her discretion by denying Hill's motion, where the jury found the bureau to be 100% liable for his injuries but awarded only $1800 damages beyond payment of his medical bills, which totaled $5,844.

Most of the material facts of this case are not in dispute. On May 12, 1984, Hill, an inmate of the State Correctional Institution at Graterford, was trying out for a prison baseball team. The practice session was taking place on the athletic field on the prison grounds. The field also was used for playing football in the fall. When the field was set up for football, goal posts were installed in holes in the field containing metal sleeves. When the goal posts were not in place, the holes were covered by caps that screwed snugly onto the sleeves but were not otherwise locked or secured.

As Hill was running to catch a fly ball hit toward him in the outfield, his left foot became caught in a goal post hole from which the cover had been removed. Hill fell backward to the ground, fracturing his ankle in three places. After some of the other ballplayers carried Hill from the field, he was taken to Montgomery Hospital. There Dr. Bruce Menkowitz diagnosed Hill as suffering

from a trimalleolar fracture of the left ankle. The next day Dr. Menkowitz performed open reduction internal fixation surgery on Hill's ankle, which involved making two separate incisions and securing the fractures with five metal screws and one plate. The doctor then applied a cast that covered most of Hill's leg.

After five days in the hospital, Hill returned to the institution, walking on crutches. He was not able to return to his job in the prison tailor shop for three weeks. Approximately six weeks after the operation, Hill's cast was removed. He continued to walk with crutches for a period of one month after that. Hill continued to complain of pain in the ankle for over a year, and the institution provided him with medication for pain. He was admitted to Wilkes-Barre Hospital in September of 1985 for surgical removal of the metal hardware.

A panel of arbitrators heard this case on October 6, 1986. The arbitrators awarded Hill damages in the amount of $17,341.74. The bureau appealed from that decision to the Court of Common Pleas of Montgomery County. The case was tried before a jury on July 20 and 21, 1987. The jury found the defendant bureau to be 100% negligent. They awarded Hill damages in the amount of his medical expenses plus an additional $1800.

Hill filed a motion for a new trial on damages and a motion for additur. By order of December 30, 1987, the trial judge denied the motion for a new trial, and Hill has appealed from that order.

### Likelihood of Compromise

One principle relating to review of a small damages award is that compromise verdicts are expected and allowed. *Elza v. Chovan*, 396 Pa. 112, 115, 152 A.2d 238, 240 (1959). A compromise verdict is one where "the jury, in doubt as to defendant's negligence or plaintiff's freedom from contributory negligence, brings in a verdict for

the plaintiff but in a smaller amount than it would have if these questions had been free from doubt." *Phelps v. Britton, Inc.*, 412 Pa. 55, 60 n.3, 192 A.2d 689, 692 n.3 (1963). Logically, when this issue is raised, a reviewing court should consider it first, because if the small award probably was the result of a permissible compromise, then the award was not intended to be "adequate" in the sense of being reasonably related to the damages proved.[1]

Where, as here, a defendant resisting a motion for a new trial on the grounds of inadequacy argues that the small award may have resulted from compromise on the issue of liability, then the reviewing court must evaluate the likelihood of such a compromise. Courts routinely have done so. *See, e.g., Hose v. Hake*, 412 Pa. 10, 192 A.2d 339 (1963); *McIntyre v. Clark*, 314 Pa. Superior Ct. 552, 461 A.2d 295 (1983); *Bortner v. Gladfelter*, 302 Pa.

---

[1] Both sides in this case mistakenly have cited *Dougherty v. Sadsbury Township*, 299 Pa. Superior Ct. 357, 445 A.2d 793 (1982), for the proposition that a low verdict should not be disturbed where there is a conflict on the question of liability, because the jury could have compromised the liability issue with the amount of damages awarded. What the Superior Court actually said in *Dougherty* referred only to the propriety of a retrial limited to the issue of damages:

> The Supreme Court has previously held that where a substantial conflict exists on the question of liability, such that a low verdict indicates that the jury probably has compromised the liability issue with the amount of damages awarded, it is an abuse of discretion for the trial court to award a new trial *limited to the issue of damages.* Gagliano v. Ditzler, 437 Pa. 230, 232, 263 A.2d 319, 320 (1970) ... .

*Dougherty*, 299 Pa. Superior Ct. at 361, 445 A.2d at 795 (emphasis added).

In fact, the quoted language, and the *Gagliano* case cited there, stand for the opposite of the asserted proposition. A court may grant a new trial, even where a substantial conflict exists on the question of liability, but not, in such a case, limited to the issue of damages. *See Stokan v. Turnbull*, 480 Pa. 71, 77, 389 A.2d 90, 93 (1978).

Superior Ct. 492, 448 A.2d 1386 (1982); *Hevener v. Reilly*, 266 Pa. Superior Ct. 386, 404 A.2d 1343 (1979).

Here, the likelihood of compromise is small. First, the bureau presented no evidence whatsoever tending to show any contributory negligence on Hill's part. Second, although the bureau argues that it "hotly" contested the issue of liability, the theory on which its defense was based was that unless the jury believed that a civilian or prisoner employee of the institution had removed the cover from the goal post hole, then the prison could not be charged with actual or constructive notice of the hazardous condition. However, there is a high degree of likelihood that the jury concluded that, regardless of who removed the cover, the prison had at least constructive notice of the dangerous state of the goal post hole, which was an artificial condition that the prison itself had installed in a piece of real estate that should be highly controlled, a prison yard.

### Inadequacy of Damages

The Superior Court summarized the general principles involved in appellate review of a trial court's decision to grant or to deny a new trial on the grounds of inadequacy of damages in *Bortner v. Gladfelter*, 302 Pa. Superior Ct. 492, 496-97, 448 A.2d 1386, 1388-89 (1982):

> Whether to grant a new trial because of inadequacy of the verdict is peculiarly within the competence of the trial court, and its discretion is considerable. Its action, therefore, will not be disturbed on appeal except where there has been a clear abuse of discretion. Wilson v. Nelson, 437 Pa. 254, 256, 258 A.2d 657, 658-659 (1969); Dougherty v. Sadsbury Township, 299 Pa. Super. 357, 360, 445 A.2d 793, 795 (1982); Mueller v. Brandon, 282 Pa. Super. 37, 41, 422 A.2d 664, 666 (1980); Palmer v. Brest, 254 Pa. Super. 532,

536, 386 A.2d 77, 79 (1978). However, the appellate courts do not abdicate their power of review and will reverse where a clear abuse of discretion appears. Hose v. Hake, 412 Pa. 10, 14, 192 A.2d 339, 341 (1963); Dougherty v. Sadsbury Township, supra.

'[T]o support the granting of a new trial for inadequacy, "the injustice of the verdict should stand forth like a beacon." So long as the verdict bears a reasonable resemblance to the damages proved, it is not the function of the court to substitute its judgment for that of the jury. Elza v. Chovan, 396 Pa. 112, 118, 152 A.2d 238, 240 (1959); Morris v. Peckyno, 202 Pa. Superior Ct. 490, 492, 198 A.2d 396, 397 (1964). In the latter case, [the Superior Court,] quoting 15 Am. Jur., Damages, §231, stated " 'As a rule, a verdict in an action for a personal tort may be set aside as inadequate when, and only when, it is so inadequate as to indicate passion, prejudice, partiality, or corruption, or that the jury disregarded the instructions of the court, or in some instances, where there was a vital misapprehension or mistake on the part of the jury, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff, or, according to some of the cases, where, otherwise, there has been an evident failure of justice to the plaintiff, or where the award is so inadequate that it should not be permitted to stand. Generally, a verdict will not be disturbed merely on account of the smallness of the damages awarded or because the reviewing court would have awarded more.' " ' Rutter v. Morris, 212 Pa. Super. 466, 469-470, 243 A.2d 140, 142 (1968).

This court expressed approval for the guidelines prescribed in *Bortner* as a means of evaluating the trial court's exercise of discretion in *Riddle v. Anderson*, 85 Pa. Commonwealth Ct. 271, 274-75, 481 A.2d 382, 384 (1984).

The above guidelines, although readily quoted, do not purport to be precise. The line between an award that is smaller than what the reviewing court would have granted, but still permissible, and an award that is so small that it amounts to a failure of justice to the plaintiff is not sharp.

In *Mueller v. Brandon*, 282 Pa. Superior Ct. 37, 422 A.2d 664 (1980), a woman injured in an automobile collision appealed from the trial court's denial of her motion for a new trial. In the accident she suffered a broken left ankle, a concussion and cut on her forehead, and a broken nose. The sole issue in dispute before the jury was the amount of damages for pain and suffering, and that portion of the jury's award came to $663.

The Superior Court quoted the standard for determining inadequacy from 15 Am. Jur., *Damages*, that would later appear in *Bortner*. The court then made the following cogent observation:

> Since under our system of jurisprudence our courts in most cases have no way of knowing how or why a jury reached their verdict in a given case, the presence of passion, prejudice, partiality or corruption on the part of the jury, or whether they disregarded instructions, acted under misapprehension or mistake can only be a matter of surmise by a reviewing court. The test in the last analysis must simply be whether the award when scrutinized under the law and indisputable facts of the case at hand is so inadequate that it should not be permitted to stand. . . .

In order to determine if the verdict is inadequate we must review the entire record to determine whether an injustice has occurred.

*Mueller*, 282 Pa. Superior Ct. at 40-41, 422 A.2d at 665.

The court acknowledged (1) that where a trial court refuses relief, a reviewing court is even more constrained than where the trial court grants relief; (2) that pain and suffering are elements of damage with no market value and so peculiarly for the common sense of the jury; and (3) that the award in question did not constitute a mere trivialization of the plaintiff's claim. Nevertheless, the Superior Court reversed the trial court and granted a new trial, noting that there was no contest as to the nature and extent of the injuries, which were objectively demonstrable, and that "[n]o jury is free to conclude that the presence of a nonwalking ankle cast for four weeks or undergoing nasal surgery do not necessarily involve substantial pain, suffering and inconvenience." *Id*. at 42, 422 A.2d at 666.

In the present case, Hill suffered a trimalleolar fracture of the ankle, an injury that involves a fracture of the lateral malleolus or bulbous portion at the end of the tibia bone, a fracture of the medial malleolus, the similar portion of the fibula, and a fracture of the posterior lip of the tibia. Notes of Testimony 95; R. 100. *See also* Marmor, *Injuries of the Ankle*, 2 Trauma no. 6, 1 (1961). That such a fracture would be intensely painful is self-evident. In addition, two witnesses to Hill's accident testified that he was in extreme pain at the time of his injury. N.T. 53, 63; R. 58, 68.

Beyond this evidence of pain at the time of the injury, Hill testified that he was in severe pain in the period following his first operation and that he continued to experience substantial pain in the area of the implants in his ankle for over a year. N.T. 23-24, 28-29; R. 28-29,

33-34. He supported the latter claim with documentary evidence of the prison's providing him with pain medication through that period. R. 136-43.

If the $1800 awarded Hill beyond the $5844 of his medical bills were credited entirely to pain and suffering, then the pain and suffering element would be approximately 30% of the special damages. No one disputes that such a ratio is far below what is customary in personal injury cases. A useful comparison may be made with *Lininger v. Kromer*, 238 Pa. Superior Ct. 259, 358 A.2d 89 (1976), where an en banc panel of the Superior Court upheld a trial court's grant of a new trial limited to the issue of damages, both on the grounds of excessiveness of certain awards for loss of future earnings and on the grounds of inadequacy of awards for pain and suffering. One plaintiff received $9,000 for pain and suffering and another received $4,000. The court said:

> The curious components of the jury's awards are special damages and pain and suffering. Both John Lininger and Karen Kromer were given approximately 50% of special damages for pain and suffering. In view of the serious injuries suffered by these plaintiffs, the pain and suffering awards are too low.

*Lininger*, 238 Pa. Superior Ct. at 274, 358 A.2d at 96-97.[2]

However, the $1800 in this case does not apply only to pain and suffering. Hill also presented evidence relating to the continuing effects of his injury. He testified that he still occasionally experiences sharp pain in his ankle as well as numbness and that he cannot run at all without significant pain; therefore, he cannot play any strenuous

---

[2] *See generally Tables of Verdict Expectancy Values for Ankle Injuries*, Release No. 226, Injury Valuation Reports in the Continuing Jury Verdict Research Project, Jury Verdict Research, Inc. (1979).

sports. N.T. 36, 40-41; R. 41, 45-46. In addition, Dr. Harvey Kleinberg, D.O., who examined Hill on July 30, 1986, and took an X-ray of the ankle and reviewed Hill's medical records, testified that the fracture had caused tendonitis and arthritis of the left foot and ankle. N.T. 96; R. 101. The doctor characterized this condition as being permanent. N.T. 97; R. 102. As Hill emphasizes in his brief, the bureau presented no evidence at all on the issue of damages, and its counsel did not even cross-examine Dr. Kleinberg.

Although a jury need not accept even uncontradicted testimony, *Bronchak v. Rebmann*, 263 Pa. Superior Ct. 136, 140, 397 A.2d 438, 440 (1979), there appears to be no basis in this case for a finding that Hill does not suffer some residual impairment of his ability to enjoy life's pleasures as a direct result of his injury. The trial judge expressly instructed the jury that they should compensate Hill for this distinct element of damages if they found the bureau liable. N.T. 117; R. 122. Therefore, the portion of the award intended to compensate for pain and suffering is actually less than $1800.[3]

Although a demonstration of prejudice on the jury's part is not a necessary condition to support a conclusion of inadequacy under *Bortner* and *Riddle*, our courts have not hesitated to infer the existence of prejudice where the facts of a particular case warranted such an inference. For example, in *Vidmar v. Sigmund*, 192 Pa. Superior Ct. 355, 162 A.2d 15 (1960), a mother brought an action in her own right and as guardian of her daughter for personal injuries inflicted upon them as a result of an assault

---

[3] Hill did not claim damages for loss of future earning capacity. He testified that he believed he would be able to return to his work as a window washer when he is released from prison, especially if he were able to get younger employees to do the high work, as others had done with him when he was young. N.T. 37; R. 42.

and battery by the child's father, since deceased. The mother suffered multiple contusions and abrasions of the face, head, body and extremities and a fractured face on the left side. At trial the court directed a verdict against the minor plaintiff on a theory of parental immunity later acknowledged to have been erroneous. The jury awarded the mother a very low amount. The Superior Court noted that the mother and father had maintained a "meretricious" relationship over a long period. In upholding the trial court's grant of a new trial to the mother, the Superior Court commented:

> In view of the evidence the award of $285.57, the balance of her actual expenses, does seem to be grossly inadequate and as the appellees suggest, may possibly be explained by the jury's visiting their moral indignation at the sordid relationship between the parties, on the mother. It might, too, be noted that the direction of a verdict against the minor plaintiff may have had an effect.

*Vidmar*, 192 Pa. Superior Ct. at 361, 169 A.2d at 17.

In the present case, Hill contends that the only rational explanation for the jury's low award is the jury's prejudice against him as a convicted prisoner or as a black person or both. The existence of such a possibility cannot be ruled out in this case.

Under the guidelines set forth in *Bortner v. Gladfelter* and *Riddle v. Anderson*, as well as other precedents cited above, this court has the power to reverse a trial court's denial of a motion for a new trial where this court is convinced from uncontradicted testimony that the verdict "bears no reasonable relation to the loss suffered by the plaintiff" or there has been "an evident failure of justice to the plaintiff." In our considered judgment, we conclude that this is such a case.

We emphasize that we do not establish any particular ratio of pain and suffering damages to special damages or any particular dollar figure as automatically constituting inadequacy. Each case must be examined in the light of its unique facts. As the cases discussed above demonstrate, however, an award for pain and suffering with respect to obviously serious injuries need not be zero or nominal or a trivialization of the plaintiff's injury in order to be inadequate.

Under the facts and circumstances of this case, given the uncontradicted evidence of the seriousness of Hill's injury and the lack of any claim of contributory negligence or likelihood of compromise, we are convinced that permitting this verdict to stand could not possibly have the effect of adequately compensating the plaintiff. Accordingly, the trial judge's denial of Hill's motion for a new trial must be classed as an abuse of discretion, and we must reverse the trial judge's order and remand with instructions to grant a new trial.

There remains only the question of the extent of the new trial on remand. A new trial may be granted solely on the issue of damages if (1) the issue of liability has been fairly determined and (2) the question of damages is readily separable from the issue of liability. *Troncatti v. Smereczniak*, 428 Pa. 7, 235 A.2d 345 (1967); *McIntyre v. Clark*, 314 Pa. Superior Ct. 552, 461 A.2d 295 (1983). As the discussion above indicates, we conclude that in this case the issue of liability has been fairly determined. Because there has been no hint of a claim of contributory negligence here, and the issue of liability is not otherwise entwined with that of damages, the question of damages is readily separable from the issue of liability. Therefore, the new trial should be limited to the issue of damages.

## ORDER

NOW, March 15, 1989, the order of the Court of Common Pleas of Montgomery County at No. 86-09947, dated February 6, 1988, is reversed. This case is remanded to the Court of Common Pleas with instructions to conduct a new trial in this matter limited to the issue of damages.

Jurisdiction relinquished.

Judge BARRY concurs in the result only.