611 A.2d 314

**Jeffrey A. CATALANO, Appellant,**

v.

**David M. BUJAK, Appellee.**

Commonwealth Court of Pennsylvania.

Submitted Feb. 4, 1992.

Decided June 1, 1992.

270

Paul J. Malizia, for appellant.

John C. Dennison, II, for appellee.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, McGINLEY, SMITH and PELLEGRINI, JJ.

PELLEGRINI, Judge.

Jeffrey A. Catalano (Catalano) appeals from an Order of the Elk County Court of Common Pleas (trial court) denying his

Motion for a New Trial limited to the question of damages after a jury rendered a verdict in his favor in his suit against David M. Bujak (Bujak), a police officer, for personal injuries.

On the evening of December 6, 1986, Bujak, a police officer for Benzinger Township, Elk County, observed a car travelling 89 miles an hour in a 55 mile per hour zone. Bujak pulled the car over and asked the driver, Catalano, to step out of the car. Bujak suspected that Catalano was intoxicated and proceeded to administer field sobriety tests. After administering the tests, Bujak placed Catalano under arrest for driving under the influence.

Exactly how the arrest occurred was much disputed by the parties. Catalano testified at trial that Bujak "forced" him over the hood of his car in order to apply handcuffs. Catalano stated that in the course of being forced over the hood, he extended his arms to break his fall resulting in serious injury to both wrists. Bujak, on the other hand testified at trial that he did not use excessive force in handcuffing Catalano and that Catalano placed his hands on the hood of the car at Bujak's request and without being forced. However, Catalano demonstrated to the jury that Bujak's testimony at trial conflicted with his prior deposition testimony in which he stated that Catalano did have to be forced over the hood of his vehicle in the course of handcuffing him.

Following his arrest, Catalano was taken to the hospital by Bujak for a blood-alcohol test, but Catalano did not complain to the hospital staff about any injury to his wrists. Catalano was not admitted to the hospital or treated for his wrist injuries while at the hospital or for nearly a month following the incident. Catalano did testify that he complained of numbness and of an inability to perform his work adequately as an assistant manager of a supermarket following his arrest.

In January of 1987, Catalano began to receive treatment from Robert S. Supinski, M.D., for problems he was experiencing with his wrists. On April 23, 1987, Catalano underwent a surgical procedure known as a bone fusion which involved taking a bone graft from his hip area and transferring it to his right wrist. There is also a potential need for surgery on the

left wrist as well. Catalano was not able to return to work for twenty-one weeks following surgery and was on crutches for several weeks and in a cast for much of the time while off work.

At trial, Bujak presented evidence disputing Catalano's claim that he suffered the injuries complained of during the incident with Bujak, instead asserting that the injuries were the result of a possible work-related injury occurring around the same time. Dr. Supinski testified that the History on Catalano's surgical report states that Catalano had a "crushing twisting injury when an object was wrapped around his wrist at work." (Supplemental Reproduced Record (S.R.R.) 52b). Dr. Supinski also testified that the discharge summary for the same surgery stated that Catalano suffered the injury when he "was thrown up against a car." Some of Catalano's co-workers also testified that his ability to perform his duties at work, which included stocking store shelves, did not appear to be impaired in the period immediately after the incident with Bujak. (Reproduced Record (R.R.) 170–71; S.R.R. 586b, 596b).

The case was heard by a jury which, in a "Verdict Containing Specific Questions," found that Bujak's conduct had been willful and that this willful conduct had harmed Catalano. The jury awarded Catalano damages in the amount of $1,543.44, which represented the full amount of medical expenses and incidental costs which Catalano submitted to the jury.[1] However, the jury did not award Catalano any of the $4,536.14 in past lost wages he submitted,[2] nor did they award any damages for future lost earnings or earning capacity, past and future pain and suffering, embarrassment and humiliation, nor disfigurement and loss of enjoyment of life.

1. Catalano's medical expenses actually totalled $8,640.03, but Catalano asked the jury for only his out-of-pocket expenses which the jury awarded. *See* Catalano's Exhibit Nos. 12 and 14.

2. Catalano's submission to the jury for actual past lost wages included only those wages he lost during the twenty-one weeks he missed following surgery less those he recovered from two disability insurance plans. *See* Catalano's Exhibit No. 13.

Catalano filed a Motion for a New Trial limited to the issue of damages. By Order dated December 20, 1990, the trial court denied the motion.[3] The trial court held that the reason for the jury awarding only medicals and incidentals was that the issue of liability was hotly contested and therefore the jury's award very likely represented a compromise verdict. The trial court also held that the award was not so inadequate as to indicate passion, prejudice, partiality or corruption or that the jury had disregarded the instructions of the court. Catalano now appeals the trial court's Order.

Where the trial court has refused to grant relief for an inadequate verdict, the appellate court must exercise great caution in reviewing the action and will not grant a new trial absent a clear abuse of discretion. *Wilson v. Nelson,* 437 Pa. 254, 258 A.2d 657 (1969); *Burkett v. George,* 118 Pa.Commonwealth Ct. 543, 545 A.2d 985 (1988); *McIntyre v. Clark,* 314 Pa.Superior Ct. 552, 461 A.2d 295 (1983). However, if there is an abuse of discretion or an error of law, we must reverse and order a new trial. *McIntyre; Bortner v. Gladfelter,* 302 Pa.Superior Ct. 492, 448 A.2d 1386 (1982).

Catalano contends that the trial court committed an error and should have granted a new trial limited to the issue of damages because the jury's award of damages was inadequate. Catalano also contends that a new trial should have been granted because the jury rendered a compromise verdict which it cannot render because it found that Bujak acted willfully, an intentional tort for which compromise verdicts are inherently improper.

Bujak contends that Catalano is barred from raising the theory that a compromise verdict is improper where conduct is found to be willful because he did not raise it before the trial court. Bujak also argues that if a new trial is granted, it should be granted for both liability and damages because the issues are intertwined.

**3.** Bujak also filed a Motion for Post–Trial Relief which the trial court denied. No cross appeal has been taken by Bujak to this Court.

■ We need not determine whether Catalano properly preserved the issue regarding the permissiveness of a compromise verdict when a jury finds a defendant's conduct willful, because a review of the jury's verdict clearly reveals that it is inadequate and inconsistent, an issue Catalano raised before the trial court.[4]

The relevant portion of the jury's verdict was returned as follows:

## VERDICT

## CONTAINING SPECIFIC QUESTIONS

QUESTION 1:

DO YOU FIND THAT THE DEFENDANT'S CONDUCT WAS WILLFUL?

Yes  X     No ___

If you answer Question 1 "No", return to the Courtroom; your verdict is for the Defendant.

QUESTION 2:

DO YOU FIND THAT THE DEFENDANT'S WILLFUL CONDUCT HARMED THE PLAINTIFF?

Yes  X     No ___

If you answer Question 2 "No", return to the Courtroom; your verdict is for the Defendant.

QUESTION 3:

STATE THE AMOUNT OF DAMAGES, IF ANY, SUSTAINED BY THE PLAINTIFF:

| | | | |
|---|---|---|---|
| 1. | Medical Expenses | $ | 1,210.94 |
| 2. | Past Lost Earnings and Earning Capacity | $ | –0– |
| 3. | Future Loss of Earnings and Earning Capacity | $ | –0– |
| 4. | Past Pain and Suffering | $ | –0– |
| 5. | Future Pain and Suffering | $ | –0– |

---

**4.** *See* Catalano's Motion For Post–Trial Relief.  (R.R. 54–56).

| | | |
|---|---|---|
| 6. Embarrassment and Humiliation | $ | –0– |
| 7. Disfigurement | $ | –0– |
| 8. Enjoyment of Life | $ | –0– |
| 9. Incidental Costs | $ | 332.50 |
| TOTAL (Add Lines 1 through 9 | $ | 1,543.44 |

(R.R. 51–52).

A review of the jury's award of damages in light of the evidence presented demonstrates that the jury awarded all of the medical expenses and incidental costs Catalano submitted to them which he claimed resulted from his medical care and surgery. However, the jury did not award any lost wages or pain and suffering which Catalano claimed were also a direct result of the surgery.

■ As a general proposition, injury victims must be compensated for all they lose and all that they suffer as a result of a tort of another. *Boggavarapu v. Ponist*, 518 Pa. 162, 542 A.2d 516 (1988); *Spangler v. Helm's New York–Pittsburgh Motor Exp.*, 396 Pa. 482, 153 A.2d 490 (1959).

In *Todd v. Bercini*, 371 Pa. 605, 92 A.2d 538 (1952), a jury found that the defendant acted negligently in causing a traffic accident and awarded the plaintiff all her medical expenses resulting from the accident. However, the jury did not award the plaintiff any damages for lost wages or pain and suffering, although she underwent two operations and missed numerous days of work as a result of the surgeries. The Supreme Court held that the trial court acted appropriately when it ordered a new trial. Justice Musmanno, writing for the Court, stated:

If Mrs. Todd [plaintiff] was entitled to a verdict from the defendant because of injuries he inflicted upon her as a result of his negligence, she was entitled to *all* that the law provides in such a case. And the items of pain, suffering and inconvenience, as well as loss of wages and earning power, are inevitable concomitants with grave injuries when suffered by a wage-earner. A jury may not eliminate pain from wounds when all human experience proves the existence of pain, and it may not withhold lost wages when the

evidence in the case uncontradictedly establishes the loss of wages as a result of the negligence which they, the jury, have adjudicated against the responsible defendant. When it is apparent that a jury by its verdict holds the defendant responsible for a whole loaf of bread, it may not then capriciously cut off a portion of that loaf as it hands it to the plaintiff.

*Id.,* 371 Pa. at 607–08, 92 A.2d at 539. (Emphasis in original.)

Moreover, some injuries are, by their very nature, known through medical science and human experience to always include pain and suffering, such as a broken bone, a stretched muscle or a twist of the skeletal system, for which a jury must award adequate compensation. *Boggavarapu; Thompson v. Iannuzzi,* 403 Pa. 329, 169 A.2d 777 (1961); *Hill v. Commonwealth of Pennsylvania, Bureau of Corrections,* 124 Pa.Commonwealth Ct. 172, 555 A.2d 1362 (1989).

In the present case, Bujak did not present any evidence, nor does he contend, that Catalano's twenty-one weeks of past lost wages, which directly followed the surgery, were not related to the surgery. In fact, Bujak does not contend that Catalano did not miss twenty-one weeks of work as a result of the surgery. Instead, Bujak contends that the jury was in doubt as to Bujak's liability and thus compromised on the amount of damages. Bujak also contends that he presented substantial evidence that Catalano's injuries were not the result of Bujak's actions, but a result of an injury at work.

In order to support the granting of a new trial for inadequacy, "the injustice of the verdict should stand forth like a beacon." *Elza v. Chovan,* 396 Pa. 112, 118, 152 A.2d 238, 240 (1959); *Hill,* at 177, 555 A.2d at 1365. A court may not substitute its judgment for that of the jury if the verdict bears a reasonable resemblance to the proven damages. *Elza; Hill; Austin v. Harnish,* 227 Pa.Superior Ct. 199, 323 A.2d 871 (1974). However, a jury verdict which is clearly inadequate and does not bear a resemblance to the uncontested damages, given the evidence presented, must be overturned and a new

trial granted. *Todd; Elza; Ciarracco v. Campbell,* 282 Pa.Superior Ct. 60, 422 A.2d 675 (1980).

The jury, by awarding Catalano *all* of his medical expenses and incidentals, in essence made a finding that the surgery was totally related to Bujak's actions in injuring Catalano. However, by not awarding *any* past lost wages or pain and suffering, the jury also made a finding that the past lost wages did not result from Bujak's actions or the surgery nor did Catalano suffer any pain and suffering as a result of his injuries and subsequent surgery. Such findings are inherently inconsistent.

Catalano presented nearly uncontradicted evidence concerning the loss of twenty-one weeks of work recovering from the surgery which grafted a piece of bone taken from his hipbone onto his right wrist. The nature of Catalano's injury and subsequent surgery also clearly indicates at least some pain and suffering. The jury's failure to award any damages for lost wages or pain and suffering is clearly inconsistent with its finding regarding medical expenses and incidentals and results in an inadequate verdict.[5] Accordingly, a new trial must be awarded.

If the jury had intended to find that Catalano's injuries were also caused, in part, by another injury suffered at work, it should have awarded Catalano a percentage of the damages it attributed to Bujak's actions of all the damages that Catalano has proved by his evidence. Moreover, although we do not reach the issue of whether a true compromise verdict between liability and damages is permissible in this situation, the refusal to award *any,* as opposed to a percentage of, lost earnings or pain and suffering cannot be construed as a permissible compromise verdict under the evidence presented, and a new trial must be awarded.[6] *See Hill; Burkett; Bortner.*

---

**5.** We do not, however, reach the issue of the inadequacy of the jury's failure to award the other, more speculative damages sought by Catalano.

**6.** While compromise verdicts are normally looked upon favorably, a compromise verdict is essentially the jury's own rough rendering of a

We must now address the issue of whether the new trial should be limited to the issue of damages. A new trial limited to the issue of damages may be granted only where: 1) the issue of liability is not contested or has been fairly determined; and 2) the question of liability is not intertwined with the question of damages. *Gagliano v. Ditzler*, 437 Pa. 230, 263 A.2d 319 (1970); *McIntyre*.

Reviewing the evidence presented at trial in light of our conclusion that the jury's award of damages was in error, we hold that a new trial must be granted on both liability and damages because the issue of liability is hotly contested and intertwined with the extent of the damages suffered.

It is clear from the verdict that the jury found that Bujak at least acted willfully and harmed Catalano as a result. However, the extent that Bujak's conduct injured Catalano is not readily apparent due to the jury's inconsistent and inadequate verdict. In order for a new jury to determine the extent of Bujak's conduct and the harm inflicted on Catalano, as well as the extent of a possible work-related injury, the jury will need to hear all the evidence presented on liability. Moreover, as evident from the facts, the issue of liability was hotly contested and the jury's inconsistent verdict may have resulted in a possible impermissible compromise.

Accordingly, we will reverse the trial court and remand for a new trial on both liability and damages.

### ORDER

AND NOW, this 1st day of June, 1992, the Order of the Elk County Court of Common Pleas dated December 20, 1990, is

"pure" comparative negligence analysis where the jury reduces its award by the amount of the plaintiff's contributory negligence, regardless of the percentage. *See Dawson v. Fowler*, 384 Pa.Superior Ct. 329, 558 A.2d 565, *petition for allowance of appeal denied*, 523 Pa. 636, 565 A.2d 445 (1989). Comparative negligence principles, however, apply only to those actions grounded in negligence. *See McMeekin v. Harry M. Stevens, Inc.*, 365 Pa.Superior Ct. 580, 530 A.2d 462 (1987), *petition for allowance of appeal denied*, 518 Pa. 619, 541 A.2d 746 (1988).

reversed and the case is remanded for a new trial on both liability and damages.

Jurisdiction relinquished.

PALLADINO, J., dissents.

DOYLE, Judge, dissenting.

While I agree with the majority that the jury's award on damages was inadequate, I must dissent, nevertheless, because I do not believe that we should reach that issue without considering first the issue of the jury's compromise. Further, I would not remand this case for a new trial on the issue of liability.

Once the jury determined that Officer Bujak's conduct was willful (established beyond doubt by its answer to the first question submitted to it) and that it was Bujak's conduct which caused the harm suffered by Catalano (likewise established beyond peradventure by the answer to question number two) the jury could not thereafter return a compromise verdict as that term and concept is properly understood in the law. However, both Catalano and Bujak, as well as the trial court, agree that that is exactly what the jury did in this case. And, once it is concluded that a compromise verdict was reached, it becomes necessary for this Court to examine the propriety of such a verdict where the jury also found that the defendant's actions were willful, as opposed to merely negligent.

Before reaching this substantive issue, however, there is a threshold issue raised by Bujak that this issue has been waived.

Rule 302(a) of the Rules of Appellate Procedure provides that issues not raised in the lower court are waived and cannot be raised for the first time on appeal, Pa.R.A.P. 302(a); *Pennsylvania Liquor Control Board v. Willow Grove Veterans Home Association, Inc.*, 97 Pa.Commonwealth Ct. 391, 509 A.2d 958 (1986). We have held in prior decisions that "arguments" and "theories" also cannot be raised for the first time on appeal. *See Borough of Edgeworth v. Lilly*, 129 Pa.Commonwealth Ct. 361, 565 A.2d 852 (1989), *petition for*

*allowance of appeal denied,* 525 Pa. 659, 582 A.2d 325 (1990), (defendant in adverse possession dispute who had not raised argument based on earlier deed before trial court could not employ argument based on deed for first time on appeal); *Perin v. Board of Supervisors of Washington Township,* 128 Pa.Commonwealth Ct. 313, 563 A.2d 576 (1989) (appellant could not raise legal theory based on nonjurisdictional statute that was not raised before trial court); *Janosko v. Pittsburgh National Corp.,* 83 Pa.Commonwealth Ct. 636, 478 A.2d 160 (1984) (plaintiff who had proceeded before trial court on traditional concepts of negligence in personal injury case could not argue on appeal legal theory based on the Restatement (Second) of Torts § 323).

In the case presented, however, the issue before the trial court on Catalano's motion for post-trial relief, broadly stated, was whether the verdict in question could be explained as a compromise verdict, the same broad issue that is argued by Catalano on appeal to this Court.

Furthermore, Catalano is not raising a new legal theory on appeal to this Court. Catalano argued to the trial court that the verdict could not be factually explained as a compromise verdict because of the jury's findings of willfulness, but that was, in effect, what the jury actually, and impermissibly, did. Specifically, in paragraph 5 of Catalano's motion for post-trial relief, Catalano states that "[t]he verdict was not a compromise verdict on the issue of *liability* since the jury unanimously found ... that the Defendant's conduct was willful, and that the willful conduct harmed the Plaintiff" (emphasis added). By this statement, it is apparent that Catalano meant that the jury's verdict was an improper compromise and that the jury should not have reached a compromise verdict as that term is used with legal significance.

Because the issue was properly raised, therefore, we may then proceed to an analysis of the propriety of a compromise verdict in this case.

A "compromise verdict" is essentially a jury's own rough

rendering of a "pure" comparative negligence analysis.[1] The jury concludes that the defendant was in fact causally at fault, but not completely responsible for the injury, and thus reduces the plaintiff's award by the amount which it believes the plaintiff had been negligent. The function and effect of a compromise verdict is thus much the same as the function and effect of Pennsylvania's comparative negligence statute.[2] *See Dawson v. Fowler*, 384 Pa.Superior Ct. 329, 558 A.2d 565 (1989), *petition for allowance of appeal denied*, 523 Pa. 636, 565 A.2d 445 (1989). In *Hill v. Bureau of Corrections*, 124 Pa.Commonwealth Ct. 172, 555 A.2d 1362 (1989), Judge Craig succinctly summarizes the principles concerning compromise verdicts and notes that a compromise verdict is one where "the jury, in doubt as to defendant's negligence or plaintiff's freedom from contributory negligence, brings in a verdict for the plaintiff but in a smaller amount than it would have if these questions had been free from doubt."

Working from the proposition that a compromise verdict is analogous to a comparative negligence analysis, it becomes clear that a compromise verdict can have no application in a

---

1. A "pure" comparative negligence system is one where the relative negligence of the plaintiff and defendant is compared, and the plaintiff is allowed a recovery reduced by his proportion of the fault regardless of whether the plaintiff was found to be more negligent than the defendant. 57B Am.Jur.2d *Negligence* § 1141 (1989). This is in contrast to the Pennsylvania doctrine of comparative negligence which would bar recovery if the plaintiff's negligence was greater than that of the defendant's. Section 7102 of the Judicial Code, 42 Pa.C.S. § 7102.

2. 42 Pa.C.S. § 7102. That statute provides as follows:

    (a) General Rule.—In all actions brought to recover damages for negligence resulting in death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is sought, but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff.

    The major difference between the operation of this statute and a compromise verdict lies in the fact that under this statute, a plaintiff may not recover if he or she is found to be more negligent than the defendant. For a discussion of the interrelation of compromise verdicts, comparative, and pure negligence concepts, *see Deitrick v. Karnes*, 329 Pa.Superior Ct. 372, 478 A.2d 835 (1984).

case where the jury concludes that an intentional tort has been committed. Comparative negligence principles do not apply to any action except those grounded in negligence. *McMeekin v. Harry M. Stevens, Inc.*, 365 Pa.Superior Ct. 580, 530 A.2d 462 (1987), *petition for allowance of appeal denied*, 518 Pa. 619, 541 A.2d 746 (1988); *Krivijanski v. Union Railroad Co.*, 357 Pa.Superior Ct. 196, 515 A.2d 933 (1986) (when willful or wanton misconduct is involved, comparative negligence should not be applied).

In the instant case, the jury specifically found that Bujak's conduct had been willful[3] under Section 8550 of the Judicial Code, 42 Pa.C.S. § 8550 (relating to governmental and official immunity).[4] This Court has held that willful misconduct in the context of this statute is synonymous with "intentional tort." *Lancie v. Giles*, 132 Pa.Commonwealth Ct. 255, 572 A.2d 827 (1990); *King v. Breach*, 115 Pa.Commonwealth Ct. 355, 540 A.2d 976 (1988). Given that Bujak's conduct was in the nature of an intentional tort, the negligence concept of a compromise verdict does not apply. Accordingly, the majority should have reversed and granted a new trial on this basis rather than on the basis of the inconsistency and inadequacy of the damage award.

I further dissent from the majority's conclusion that on remand, the trial should encompass the issue of liability, as well as damages. The majority bases its reasoning for doing so on the fact that the issue of liability was "hotly contested." However, a new trial limited to damages may be granted where the issue of liability is *either* (a) not contested *or* (b) has been fairly determined so that no substantial complaint can be

3. *See* verdict slip,. reproduced on page 317 of majority opinion.

4. Section 8550 provides as follows:
   In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.
   42 Pa.C.S. § 8550.

made with respect thereto. *See Gagliano v. Ditzler,* 437 Pa. 230, 263 A.2d 319 (1970); *McIntyre v. Clark,* 314 Pa.Superior Ct. 552, 461 A.2d 295 (1983). There was no showing or suggestion that the issue of liability was not fairly determined in this case. To the contrary, it was specifically addressed and answered by the jury.

Furthermore, there is no reason to conclude, as the majority does, that the issue of liability is unduly intertwined with the issue of damages. The issue of liability concerned one single question; essentially, did Bujak act tortuously and willfully vis-a-vis Catalano. The question of what injuries resulted as a consequence of Bujak's action is entirely separate and distinguishable and involves evidence concerning Catalano's medical history, his conduct subsequent to the incident, and the testimony of witnesses who observed Catalano after the incident. These categories of evidence have nothing whatsoever to do with the initial question—did Bujak force Catalano over the hood of the car?

Finally, it must be noted that Catalano is the appellant in this manner and that he has requested a new trial on the *issue of damages alone.* Catalano has not requested a new trial on liability and Bujak has failed to file a cross-appeal. The majority thus goes beyond Catalano's prayer for relief, and in effect, grants the new trial on liability sua sponte. I cannot help but point out that the majority's decision places Catalano in a position potentially worse than that which he would have occupied had he not appealed at all.