Krywucki et al., Appellants, *v.* Trommer.

Argued June 14, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*James E. Beasley,* with him *Sheldon L. Albert, John A. Kaufman,* and *Beasley & Ornsteen,* and *DeAngelis & Kaufman,* for appellants.

148

*Victor J. Roberts,* with him *High, Swartz, Roberts & Seidel,* for appellee.

*Harold W. Spencer,* with him *Wright, Spencer, Manning and Sagendorph,* for appellee.

OPINION BY WATKINS, J., September 13, 1962:

These are appeals of Karen Krywucki, a minor, by her natural guardian and parent, John Krywucki, and John Krywucki, in his own right, from the judgment of the Court of Common Pleas of Montgomery County, in an automobile accident trespass case, entered on a verdict in favor of the minor plaintiff, in the amount of $1000, and in favor of her plaintiff-father, in the amount of $250, and against the defendant-appellee, Anthony Joseph Bocchino, Jr.; and from the denial by the Court below of their motion for a new trial. The verdict was in favor of Frederick Trommer, Jr., the other defendant-appellee.

The minor plaintiff was six years old at the time of the accident. She was injured when struck by a car driven by one of the defendants, Frederick Trommer, Jr. The accident happened on a warm, clear Sunday, May 6, 1957, at 7:00 p.m. It was still daylight. She was struck while crossing Bannockburn Avenue, in Ambler, Pennsylvania, on her way to a playground located on the south side of the avenue. She lived on the north side of the avenue in No. 255, one of the row of houses located there. The avenue is 29.6 feet wide and runs east and west. Cars are permitted to park on the north side of the avenue, and, at the time of the accident, were parked solidly along the north side curb.

Karen testified that she left her home at No. 255 and walked down to the pavement, and walked westwardly along the pavement to the location of No. 247 (this is a distance of 63 feet), where, she testified, she

walked out into the street between the parked cars and behind the double parked car of Bocchino; that she looked both directions, saw nothing, started to cross the highway and was struck about two feet from the south curb.

The defendant Bocchino was proceeding eastwardly on the avenue and stopped to deliver a package at No. 247. In order to park, he crossed into the westbound traffic lane on the wrong side of the street, and double parked, facing east in front of No. 247. He went in to deliver the package and returned to his car in about ten minutes. He was parked about one foot from the parked car, and was about one and one-half feet over the center line.

While Bocchino was in his car getting ready to continue in an eastwardly direction, the defendant Trommer was already proceeding on the avenue in a westwardly direction. As he passed Karen's residence at No. 255 he observed her coming down the steps onto the pavement but did not see her thereafter until the accident. As Bocchino started to move his car he saw Trommer approaching, stopped, still facing east, and straddling the middle line of the street, permitted Trommer to cross over into the eastern traffic lane in order to pass him. At this point both cars were in wrong traffic lanes. Trommer's car was in the east traffic lane only because of the location of the Bocchino car.

As Trommer passed the Bocchino car there was the sound of brakes and people shouting. Bocchino ran from his car and found Karen lying in the street about two feet from the curb. He had not seen her before the accident.

Trommer testified that he was traveling ten to fifteen miles per hour when he passed the Bocchino car when Karen appeared about eight feet in front of him; that he braked immediately but struck Karen a slight

blow. His testimony was that she "ran into me at an angle like" as he turned his car to avoid striking her. He had seen her come to the pavement at No. 255 but had not expected her to cross the street at a point opposite No. 247. The double parked cars obscured his vision to the west. There were skid marks of five and one-half feet made by the Trommer car. The left front wheel was three feet from the south curb line. There was disinterested testimony by neighbors that Karen ran from her home at No. 255 down the steps and westwardly along the pavement to No. 247, then into the street without looking, and that Trommer was traveling slowly and stopped immediately.

Karen suffered two black eyes, lacerations and bruises and spent six days in the hospital. Thereafter, her parents testified they noticed Karen began drooling, falling, becoming dizzy, having headaches, being restless and having poor coordination. The plaintiffs claimed that she suffered permanent brain damage as a result of the accident, and there was medical testimony to support this claim based on the history supplied by the parents. The defendants, through disinterested witnesses, neighbors, and her kindergarten teacher sought to prove that Karen always manifested the symptoms complained of and if she did suffer from brain damage it was congenital. The plaintiffs insist that Trommer was also negligent and that the verdict was grossly inadequate. Credibility was, of course, for the jury. The jury found "for defendant Frederick Trommer, Jr. For plaintiff, Karen Krywucki and against Anthony Joseph Bocchino, Jr., defendant— $1000. For plaintiff John Krywucki and against Anthony Joseph Bocchino, Jr., defendant—$250."

The burden in this appeal is on the appellants to show the refusal of a new trial by the court below was an abuse of discretion, when the evidence is examined in the light most favorable to the appellees. We can-

not agree with the contention of the appellants that the court below committed fundamental error in reading defendant's point for charge involving the "dart out" principle as follows: "The defendant, Frederick Trommer, Jr., cannot be held responsible for the accident if he was driving his car at the time under proper control under the circumstances and Karen Krywucki suddenly darted across the street immediately in front of his car from behind two vehicles which hid her from his view. If you believe that is what happened here, then your verdict must be for the defendant, Frederick Trommer, Jr."

He also charged: "Members of the jury, I charge you that since both defendants admitted seeing children in the immediate area, a great or high degree of care or caution was required of both operators for the protection of this child.

"Members of the jury, I charge you that it is not a defense to defendant, Trommer, that he could not anticipate that Karen would cross the street in the middle of the block. I charge, as a matter of law, that where a driver knows of the presence of a child, as Trommer here admits, he must anticipate such childish behavior and is charged with knowledge of childish conduct.

"Members of the jury, where an operator of a motor vehicle has reason to apprehend that children may run into a place of danger, he has a duty to have his car under such control that it can be stopped on the shortest possible notice of danger. In this connection, you will recall that defendant, Trommer, admits he expected this little girl to run into the street. In view of this admission, if you find that defendant, Trommer, did not have his car under such control, and you must consider that no action was taken by Trommer after he was aware of what the child was going to do and the time of impact, then you may find him negli-

gent and if this negligence was the proximate cause of the injuries suffered by Karen, then you may bring in a verdict for the plaintiffs."

Taking the charge as a whole and keeping in mind the testimony of Karen's neighbors that she ran down the sidewalk behind the parked cars to their house; ran out between the parked cars without looking and that the defendant's car stopped immediately, we agree with what Judge GROSHENS said, that: "It is evident when viewing the charge as a whole that there was no reversible error. Isolated portions of a charge, even if in error, will not justify a new trial unless basic, fundamental and prejudicial error. Segriff v. Johnston, 402 Pa. 109. The charge of the court instructed the jury as to defendant's duty under the circumstances. It also placed before them the possibility that defendant had done everything a reasonable person would do under the circumstances, and that Karen had run into the street in such a manner that it was impossible for him to avoid her. We think this was a proper charge warranted by all the evidence and the law."

We cannot agree that the verdict of the jury was so incredibly against the weight of the evidence and the law and so based on passion and prejudice that a new trial is warranted. Floyd Donner, a neighbor, was a school teacher for more than five years; his wife, Barbara Donner, before her marriage, a laboratory technician; and Mrs. Frances Behringer, Karen's kindergarten teacher, teaching school for more than 35 years, were subpoenaed by the defendants and were clearly disinterested witnesses who impressed the court below as truthful witnesses and evidently so impressed the jury. Again we recite from the opinion of the trial judge. "There is nothing to indicate that the jury disregarded the law. Bocchino was properly found to be negligent. The issue is, should Trommer have been found negligent. Counsel argues that Trommer's tes-

timony was incredible and unworthy of belief. We think he ignores the testimony of Mrs. Donner. It is true that Trommer testified he fully expected Karen might run into the street, but his speed, his attention and stopping time indicate he was proceeding in a manner that was not negligent under the circumstances. Furthermore, the child appeared some sixty-three feet distant from where she had run down the steps and ran into the street without looking according to Mrs. Donner. There is certainly sufficient evidence to justify a jury concluding that Trommer had not been negligent under the circumstances."

The evidence in favor of Trommer are the facts that his view was obscured by the double parked cars; that the child appeared in the highway at a point sixty-three feet westwardly from where he had first seen her; that his speed was ten to fifteen miles per hour; that the child in running out between the double parked cars was not in the cartway sufficient length of time to be observed; that "she ran down the sidewalk . . . into the street . . . without looking left or right for traffic . . . and I just saw her run into it . . ." The fact that he was in the wrong lane was the result of Bocchino's negligence and so long as his passing was with the proper care under the circumstances could be no different as far as Trommer was concerned than if he were passing a slowly moving vehicle driving in a westwardly direction. From this testimony the jury could and did find for the defendant. *Cason v. Smith,* 188 Pa. Superior Ct. 376, 146 A. 2d 634 (1958).

There was no error in the judge's charge in regard to the possibility of the public school system providing special education in certain situations for retarded children. On direct examination, a Dr. Davidson testified that Karen could not go through the regular public school educational system without special treatment. On cross-examination he testified that there is a re-

tarded children's program by which the public schools provide for special training on various subjects. A Dr. Matthews testified she couldn't get the training she needs in public schools. Although the evidence indicated that there was conflict in the testimony that the public schools could give the necessary special training and testimony that she could only get the necessary special school training at great expense at private institutions, the court charged: ". . . that she would require additional training and supervision until she was in her early twenties. Taking into consideration only the eight years of schooling the cost amounts to $13,720. If you find this child requires this training, and schooling, and this is uncontradicted by either defendant, then you should award an appropriate sum to Mr. Krywucki as the parent of Karen." This was virtually charging the jury that if they believed plaintiff's evidence they should award a sum for special schooling. The jury gave no damages as to the educational aspect, not because of the court's charge, but in spite of it, and because disinterested witnesses stated that the minor plaintiff's symptoms existed before the accident and so were not caused by it.

The chief complaint of the appellants is that the trial judge committed fundamental error in giving further instructions to the jury in the absence of the parties and their counsel. The record in this case contains an affidavit by one, James P. Cliggett, an investigator for the appellants, to which is attached a letter from a juror setting forth that a communication was sent to the trial judge asking the following question: "Can we find Trommer not guilty and at the same time Bocchino guilty of contributory negligence?" and that the judge answered "Yes". The trial judge has no recollection of the receipt of such a note and there is no record of the nature of the note and it has not been preserved.

As the court below says: "The entire argument rests on counsel's assumption that a request for instructions was made by the jury and that the trial judge gave the jury supplementary instructions. The trial judge has no independent recollection of such an occurrence, and certainly has no recollection of the contents of the note. The court stenographer has assured the court that such a note did exist but is lost. The trial judge has never instructed a jury on matters of law or fact except after advising counsel of the request, of the proposed instruction, and allowing counsel to object, supplement or submit additional suggestions. The trial judge has never instructed a jury on questions of law or fact or commented on the evidence without advising counsel . . . Because the trial judge has never departed from his practice of charging a jury in court before counsel, he can only presume, in the absence of recollection, that he did not depart from the rule in this case. Indeed, his failure to recollect the note further convinces him that its contents were of no concern to counsel or litigants. Furthermore, counsel was in court. Someone told him of the note at the time it was sent. He knew the trial judge received it. He knew that an answer was made without his being advised of it. He knew the trial judge was in chambers. By the simple act of going to chambers and speaking to the trial judge, he could have removed all doubt on the matter. He chose to wait until after a verdict, unsatisfactory to his clients, before raising the objection."

A party may not sit by silent, taking his chances on a verdict, and, if it is adverse then complain of matters which, if error, could have been eradicated during the trial if brought to the court's attention properly and timely. *Segriff v. Johnston*, 402 Pa. 109, 166 A. 2d 496 (1960). Here, too, the appellants could have taken depositions in regard to the alleged note and the judge's alleged reply. Under the record in this case

we are bound to accept the trial judge's recollection that no such additional charge was made.

Most certainly we cannot take into consideration the letter of a juror, not under oath, but given to the appellant's investigator. Jurors cannot impeach their own verdicts. *Friedman v. Ralph Brothers, Inc.,* 314 Pa. 247, 171 A. 900 (1934); *Wolfe v. Riggle,* 407 Pa. 172, 180 A. 2d 220 (1962).. Under the record in this case we need not discuss whether additional instructions given without notice to counsel amount to fundamental error. However, in *Com. v. Kelly,* 292 Pa. 418, 141 A. 246 (1928), and *Com. ex rel. Comer v. Maroney,* 178. Pa. Superior Ct. 633, 116 A. 2d 301 (1955), the law is stated to be that although such practice is bad it is not ground for reversal unless prejudice or harm is shown.

*Glendenning v. Sprowls,* 405 Pa. 222, 174 A. 2d 865 (1961) held it to be misconduct of a trial judge and reversible error in visiting the jury room six times without the knowledge of counsel. However, the Supreme Court distinguished this case from *Hunsicker v. Waidelich,* 302 Pa. 224, 153 A. 335 (1931), where a new trial was refused, on two grounds, (1) the judge made only one visit to the jury room and it was conceded that nothing prejudicial was said by him and (2) that we have warned trial judges that such practice of invading the jury room would no longer be tolerated. The *Glendenning* case, then, stands for the proposition that any intrusion by a judge into the jury room during the jury's deliberations without notice to counsel is reversible error per se, as a violation of due process, but we are unable to read into the decision a change in the law as to the requirement that prejudice or harm must be shown in the case of additional instructions, without notice, to warrant a new trial, except that the practice is condemned.

We do not believe from this record that there is any question of a compromise verdict in this case. The amount of the verdict indicates action by the jury to award the out-of-pocket expenses to the father and $1000 for pain and suffering to the child on the defendant's theory that the brain damage was congenital. The court below ably disposed of the question concerning the inadequacy of the verdict as follows: "The verdict does not shock our conscience. The testimony of plaintiffs' witnesses, unrebutted, indicated a substantial verdict. The experts all agreed that Karen was suffering from brain damage and would require considerable medical aid and special training. However, the entire opinion of the doctors was based primarily and fundamentally on the child's history as given by the child's parents. If the history were true, the experts seemed to present a very strong case of partial permanent brain injury. The parents had told their medical experts that Karen began drooling, suffering dizzy spells, and manifesting the other symptoms of disorder only after the accident. The doctors accepted this history as fact. However, defense counsel called to the stand Karen's kindergarten teacher, a Mrs. Behringer. Mrs. Behringer was obviously a competent, loving teacher who was 'still a friend' of Karen, whose appearance and testimony bespoke truth. Mrs. Behringer testified that Karen drooled before the accident, that she had very poor coordination, was loud, friendly and untidy in her habits prior to the accident. The testimony was devastating to plaintiffs' case, since all of the medical experts had based their judgments on the information given them by Karen's parents that Karen had only shown these characteristics since the accident. The effect of the testimony was immediately obvious in the court room and in a great measure caused the verdict to be as it was. The testimony of the Donners, neighbors of Karen, corroborated Mrs. Behringer's tes-

158

timony. This dramatic ending to the difficult but interesting trial reversed the entire trend of the trial and removed plaintiffs' chance for a large verdict for damage to her brain."

Judgment affirmed.

WRIGHT, J., would grant a new trial.