**Heather B. LABBETT, Appellant,**

v.

**PORT AUTHORITY OF ALLEGHENY COUNTY and Pennsylvania Department of Transportation.**

Commonwealth Court of Pennsylvania.

Argued June 8, 1998.

Decided July 6, 1998.

As Amended July 14, 1998.

---

Michael R. Ford, Pittsburgh, for appellant.

Gregory A. Evashavik, Pittsburgh, for appellees.

Before PELLEGRINI, J., KELLEY, Judge (P.), and ROGERS, Senior Judge.

PELLEGRINI, Judge.

Heather Labbett (Labbett) appeals from an order of the Allegheny County Court of Common Pleas (trial court) dismissing her motion for post-trial relief and requesting a new trial on the grounds of inadequacy of the jury verdict.

On January 19, 1994, Labbett was a passenger in a vehicle travelling behind a bus that was owned and operated by the Port Authority of Allegheny County (Port Authority). As it was going through the Liberty Tunnels in Pittsburgh, the bus caught fire. As a result, Labbett was forced to leave her vehicle when the smoke from the bus filled the tunnel and she began experiencing respiratory problems. However, those problems were only temporary and resolved shortly thereafter. Eleven months after the tunnel fire, Labbett suffered additional respiratory problems when she inhaled smoke from a hamburger that had burned in her kitchen.

On May 21, 1995, Labbett filed suit against the Port Authority and the Pennsylvania Department of Transportation (PennDOT) alleging that the Port Authority was negligent in its maintenance of the bus because it caught fire and that PennDOT was negligent in the design and construction of the Liberty Tunnels for not allowing sufficient ventilation. She contended that their negligence caused her to suffer from Reactive Airways Dysfunction Syndrome (RADS). At trial, both the Port Authority and PennDOT contested liability for the incident. They maintained that even if the jury found negligence, Labbett only suffered a minor smoke inhalation injury that aggravated a pre-existing injury, most likely asthma, but which completely resolved itself shortly after the tunnel fire. Finally, they argued that if Labbett's problems at the time of trial were believed, they were not related to the tunnel fire but were a result of her inhaling the smoke from the burnt hamburger in her kitchen.

In support of her position, Labbett introduced the testimony of her treating physician, Richard M. Hoffman, M.D., who is board certified in pulmonary and internal medicine. Dr. Hoffman testified that shortly after the tunnel fire, Labbett came to him complaining of difficulty breathing and other

respiratory ailments. Tests conducted on Labbett's respiratory system were, for the most part, within the normal range. After Labbett told him that she had not had any previous respiratory illnesses, Dr. Hoffman diagnosed Labbett with RADS [1] that he believed was caused by inhaling the smoke from the tunnel fire. He opined that as a prerequisite to a diagnosis of RADS, a patient must not have had any history of respiratory illness. Dr. Hoffman stated that in his opinion, RADS was permanent and could affect her ability to work, although it did not preclude her from employment.[2] He also testified that Labbett's condition seemed to improve toward the end of 1994, and that she actually related to him that she was cured, but that her condition worsened in January 1995 after inhaling the smoke from the burnt hamburger.

On cross-examination, Dr. Hoffman admitted that the objective tests seemed to show only a minor irritation of her respiratory system and that because of that, he wondered on more than one occasion if Labbett may have a secondary motive for her complaints. He also admitted that although she told him that she had no prior respiratory illness, Labbett did previously suffer from pneumonia and several episodes of bronchitis, and that she did in the past take medication that is prescribed primarily for asthma sufferers. Dr. Hoffman then changed his definition of RADS, stating that in order to make a diagnosis of RADS, a patient could still have previously suffered a respiratory illness but that illness could not be asthma. He also admitted that if Labbett had previously suffered from asthma, that would negate the diagnosis of RADS.

In support of its position, the Port Authority introduced the testimony of Burton Mass, M.D., also board certified in pulmonary and internal medicine. Dr. Mass testified that Labbett's diagnosis could not be RADS, but was most likely an exacerbation of asthma she had prior to the tunnel fire. He based his conclusion that Labbett suffered from asthma prior to the tunnel fire because her history showed that she was taking medication consistent with the treatment of asthma. Dr. Mass opined that the tunnel fire caused a brief increase of her symptomatology that required treatment but that subsided a few months later, and that, in his medical opinion, the tunnel fire did not cause RADS in Labbett.

The jury found that the Port Authority was negligent and awarded Labbett $12,-000.00 in damages.[3] Labbett filed post-trial motions seeking a new trial limited to the issue of damages, alleging that the verdict was inadequate because it bore no resemblance to the uncontradicted testimony detailing Labbett's injuries and the amount of damages she has already suffered and will continue to suffer into the future. Furthermore, she contended that the parties stipulated that she has already incurred over $12,-000.00 in medical bills and, because that amount was uncontested, the jury was required to award at least that amount. The trial court denied the motion, holding that the verdict did not "shock the conscience" and bore a reasonable resemblance to the damages proved. The court reasoned that the jury merely chose to disbelieve the evidence on the severity and origin of her injury and returned a verdict it felt would adequate-

---

**1.** RADS is a form of respiratory disease similar to asthma that is acquired under a unique set of circumstances that include:
    (1) brief exposure to a stimulus;
    (2) freedom from prior respiratory illness, such as asthma;
    (3) symptoms that develop fairly soon or immediately after exposure; and
    (4) symptoms compatible to asthma such as chest pain, shortness of breath, etc.
    (Hoffman Dep., p. 23).

**2.** Dr. Hoffman stated that because Labbett would need to take medication throughout the day in specific intervals to get this condition under con-

trol, he felt that it would make employers disgruntled because she would need to take constant breaks to take the medicine.

**3.** The jury absolved PennDOT of any liability in the case and Labbett does not challenge the verdict against PennDOT. Moreover, the jury found that the Port Authority was negligent in the maintenance of the bus and that the driver, a Port Authority employee, negligently operated the bus. The Port Authority does not challenge its liability on appeal, but argues that if a new trial is awarded, it should be on the issues of liability and damages.

ly compensate her for the damages caused by the Port Authority. This appeal followed.[4]

On appeal, Labbett again contends that the jury verdict was inadequate and was contrary to the evidence. She argues that because the jury found that the Port Authority was entirely at fault and she submitted uncontradicted evidence that her past and future damages totaled more than $700,-000.00, the verdict was wholly inadequate because the verdict bore no resemblance to the amount of damages submitted. Moreover, Labbett contends that because the parties stipulated that her past medical bills were $12,685.66, the jury had to award at least that amount.[5]

■■■ Labbett bears a heavy burden in seeking to have the jury verdict set aside. Unless it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff, the verdict will be upheld. *Kiser v. Schulte*, 538 Pa. 219, 648 A.2d 1 (1994). Moreover, seemingly low and unfair verdicts are nevertheless adequate when the jury is presented with contradicting evidence of liability and degree of injury. *Gallagher v. Marguglio*, 429 Pa.Super. 451, 632 A.2d 1309 (1993), *petition for allowance of appeal denied*, 538 Pa. 612, 645 A.2d 1316 (1994).

For example, in *Boggavarapu v. Ponist*, 518 Pa. 162, 542 A.2d 516 (1988), the plaintiff suffered two puncture wounds to his right hand as a result of a dog bite. He went to the emergency room where he was administered two tetanus shots and given a band-aid to cover the wound. He filed suit against the owners of the dog seeking $9,000.00 in medical expenses and damages for pain and suf-

fering. The jury returned a verdict for the plaintiff but only in the amount of $42.60, the cost of the emergency room treatment. The trial court found that the verdict was inadequate and ordered a new trial. In reversing the grant of a new trial, our Supreme Court held that they could have merely disbelieved the extent of plaintiff's injuries and rejected the cause plaintiff attributed to his injuries and stated:

> Evidence is not proof until it is believed and accepted by the triers of fact. Persons may indeed suffer pain that they attribute to a cause, but at law the cause they assert must be accepted as the cause of their pain. Their belief, however well founded in their minds, is not the cause until it finds acceptance in the minds of the fact triers.

*Boggavarapu* at 168, 542 A.2d at 519.

Likewise, in *Catalano v. Bujak*, 537 Pa. 155, 642 A.2d 448 (1994), the plaintiff claimed that the verdict was inadequate where the jury awarded damages for medical expenses and incidental costs but did not award any damages for pain and suffering or lost wages. Our Supreme Court held that a new trial was not warranted because the jury chose to disbelieve that the plaintiff's pain and suffering and lost wages were caused by the injury that the defendant was alleged to have caused.

Whether the verdict was inadequate, as Labbett contends, simply because it was less that the amount of medical expenses submitted, our Supreme Court held in *Elza v. Chovan*, 396 Pa. 112, 152 A.2d 238 (1959), that just because the verdict was less than the plaintiff's expenses does not mean that a new trial is warranted. In *Elza*, the plaintiff was

---

4. Where the trial court has denied a new trial based on the inadequacy· of the jury verdict, we will not order a new trial unless the trial court clearly abused its discretion. *DeVita v. Durst*, 167 Pa.Cmwlth. 105, 647 A.2d 636 (1994), *petition for allowance of appeal denied* 540 Pa. 606, 655 A.2d 993 (1995).

5. Initially, the Port Authority contends that Labbett waived the issue of whether the verdict was inadequate because she did not object to the verdict before the jury was dismissed. However, in *Fillmore v. Hill*, 445 Pa.Super. 324, 665 A.2d 514 (1995), *petition for allowance of appeal de-*

*nied* 544 Pa. 609, 674 A.2d 1073 (1996), our Superior Court held that there was no need for a party to challenge the inadequacy of the verdict before the jury was dismissed because there would be nothing the jury could do to correct the situation. Unlike where a verdict is alleged to be inconsistent, where the verdict is only alleged to be inadequate a party could properly raise that issue on post-trial motions. We agree with the reasoning of the Superior Court and because there was no inconsistency alleged, the inadequacy of the verdict was properly preserved in her motion for post-trial relief.

injured in a car accident and had medical expenses of $1,375.00 but the jury only awarded him $950.00. The trial court ordered a new trial because the verdict was less than plaintiff's claimed medical expenses. Our Supreme Court, in reversing the grant of a new trial, reasoned that the basis of the judgment cannot solely be the ratio of the verdict to expenses because there were many other factors that could have led to the verdict, one of them being the jury's disbelief as to the extent of plaintiff's damages that were caused by the accident.

■ In this case, both liability and the extent of Labbett's injuries and their cause was hotly contested. In awarding her $12,-000.00, the jury simply believed the Port Authority's version of the case; that Labbett had a history of asthma which was exacerbated by the tunnel fire, causing her a minor and only brief period of discomfort. As for the verdict being inadequate because it was less than her medical expenses, there was evidence from which the jury could conclude that her respiratory problems caused by the tunnel fire had completely resolved shortly after that fire and that Labbett did not suffer the majority of her problems until after the burnt hamburger incident in her home for which the Port Authority was not responsible. Given all the evidence in this case, the trial court did not abuse its discretion in finding that the verdict was not inadequate and refusing to order a new trial. Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, this 6th day of July, 1998, the order of the Court of Common Pleas of Allegheny County at No. GD 95–9099 dated December 9, 1997, is affirmed.