Paul A. BESWICK and Christine
O. Beswick, husband and
wife, Appellants,

v.

Frederic B. MAGUIRE, Appellee.

Superior Court of Pennsylvania.

Argued Dec. 1, 1999.
Filed March 2, 2000.

Stanley E. Luongo, Jr., West Chester, for appellants.

Lawrence M. Farnese, Jr., Philadelphia, for appellee.

Before CAVANAUGH, DEL SOLE, POPOVICH, JOHNSON, HUDOCK, FORD ELLIOTT, MUSMANNO, ORIE MELVIN and LALLY–GREEN, JJ.

CAVANAUGH, J.

¶ 1 Did the trial court err in refusing to grant a new trial to the appellants Beswicks on the basis that the jury award in their favor was inadequate to a degree that a new trial should be awarded?

¶ 2 This is a lawsuit for personal injuries to Paul Beswick and loss of consortium damages claimed by his wife as the result of injuries suffered by Beswick in a motor vehicle accident of February 3, 1995 wherein Beswick was a passenger in a vehicle operated by the appellee, Frederic B. Maguire.

¶ 3 At the conclusion of the jury trial, the 8–person jury unanimously agreed upon a verdict which found the defendant Maguire to be causally negligent for harm caused to Beswick and awarded him damages in the sum of $31,000. An award to his wife was in the sum of $5,000.

¶ 4 The trial court, per the Honorable Clement J. McGovern, Jr., denied the motions for a new trial on the basis of inadequacy of the verdict and, after affirmance by a divided panel of this court, we grant-

ed en banc reconsideration and the panel disposition was withdrawn.

¶ 5 In 1980, when faced with a claim of inadequacy of the verdict in a case of clear liability and refusal by the trial court to grant relief, we stated the applicable standards:

> The standard for determining if a verdict is inadequate so as to merit a new trial has been stated by our courts:
>
>> ...As a rule, a verdict in an action for a personal tort may be set aside as inadequate when, and only when, it is so inadequate as to indicate passion, prejudice, partiality, or corruption, or that the jury disregarded the instructions of the court, or in some instances, where there was a vital misapprehension or mistake on the part of the jury, or where it clearly appears from the uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff, or, according to some of the cases, where, otherwise, there has been an evident failure of justice to the plaintiff, or where the award is so inadequate that it should not be permitted to stand. Generally, a verdict will not be disturbed merely on account of the smallness of the damages awarded or because the reviewing court would have awarded more. *Morris v. Peckyno*, 202 Pa.Super. 490, 492, 198 A.2d 396, 397 (1964). *See also Rhoades v. Wolf*, 207 Pa.Super. 104, 215 A.2d 332 (1965); *Poltorak v. Sandy*, 236 Pa.Super. 355, 345 A.2d 201 (1975) (Hoffman, J., dissenting).
>
> Since under our system of jurisprudence our courts in most cases have no way of knowing how or why a jury reached their verdict in a given case, the presence of passion, prejudice, partiality or corruption on the part of the jury, or whether they disregarded instructions, acted under misapprehension or mistake can only be a matter of surmise by a reviewing court. The test in the last analysis must simply be whether the

award when scrutinized under the law and indisputable facts of the case at hand is so inadequate that it should not be permitted to stand. In *Elza v. Chovan*, 396 Pa. 112, 118, 152 A.2d 238, 241 (1959), Justice Bok, speaking of the test for granting a new trial on the ground of inadequacy, stated, "... [T]he injustice of the verdict should stand forth like a beacon."

> In order to determine if the verdict is inadequate we must review the entire record to determine whether an injustice has occurred. *Elza v. Chovan, supra; Prince v. Adams*, 229 Pa.Super. 150, 324 A.2d 358 (1974). *Hevener v. Reilly*, 266 Pa.Super. 386, 404 A.2d 1343 (1979).

> Finally, we recognize that our scope of review as an appellate court is limited, especially when the trial court has refused a new trial on the ground of inadequacy:
>
>> Where the trial court *grants* a new trial on the ground of inadequacy the appellate courts will not interfere in the absence of a gross abuse of discretion.... When the trial court *refuses* relief against an allegedly inadequate verdict the appellate court *will exercise* even greater caution in reviewing its action. (Emphasis in the original).
>
> *Paustenbaugh v. Ward Baking Co.*, 374 Pa. 418, 420–21, 97 A.2d 816, 818 (1953). *Accord Hevener v. Reilly, supra; Bronchak v. Rebmann*, 263 Pa.Super. 136, 140, 397 A.2d 438, 440 (1979).

*Mueller v. Brandon*, 282 Pa.Super. 37, 422 A.2d 664 at 665–666 (1980).

¶ 6 More recently, the guiding principles have been set forth by our Supreme Court:

> A jury verdict is set aside as inadequate when it appears to have been the product of passion, prejudice, partiality, or corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff. *Elza v. Chovan*, 396 Pa. 112, 114, 152 A.2d 238, 240 (1959);

*Slaseman v. Myers*, 309 Pa.Super. 537, 541, 455 A.2d 1213, 1215 (1983). Where the jury's verdict is so contrary to the evidence as to "shock one's sense of justice" a new trial should be awarded. *Burrell*, 438 Pa. at 289, 265 A.2d at 518; *Bochar v. J.B. Martin Motors*, 374 Pa. 240, 242, 97 A.2d 813, 814 (1953). It is the province of the jury to assess the worth of the testimony and to accept or reject the estimates given by the witnesses. If the verdict bears a reasonable resemblance to the proven damages, it is not the function of the court to substitute its judgement for the jury's. *Elza*, 396 Pa. at 115, 152 A.2d at 240 (citing *Paustenbaugh v. Ward Baking Co.*, 374 Pa. 418, 97 A.2d 816 (1953)). However, where the injustice of the verdict "stand[s] forth like a beacon", a court should not hesitate to find it inadequate and order a new trial. *Elza*, 396 Pa. at 118, 152 A.2d at 241; *Slaseman*, 309 Pa.Super. at 540, 455 A.2d at 1215.

*Kiser v. Schulte*, 538 Pa. 219, 225–26, 648 A.2d 1, 4 (1994).

¶ 7 From a review of these principles, it is evident that, when reviewing alleged inadequacy of the verdict: 1) wide discretion is given to the jury in assessing damages and; 2) reviewing courts accord deference to the trial court when considering entitlement to relief. Although not articulated by our courts, it appears that the wide discretion given to jury verdicts serves practises which support the efficient operation of our jurisprudential system. We need cite no statistics to demonstrate that a significant portion of the litigation in our civil courts is occupied by personal injury tort claims. It is equally apparent that the continued vigor of our civil courts are, to a large extent, dependent on the voluntary adjustment of a great percentage of these suits by amicable agreement of the parties. Amicable agreement, in turn, is strongly encouraged by the realization that there is an inevitable risk in predicting a jury outcome. It follows that a rule of law which would discourage setting aside a jury verdict unless it does not bear a "reasonable resemblance" to the proven damages, or is the product of "passion, prejudice, partiality, or corruption" so as to "shock one's sense of justice" or where the "injustice" "stands forth like a beacon", has a salutary effect on the health of our courts by imposing an onerous burden on one who would invalidate a jury verdict.

¶ 8 With these efficacious principles (which logically and properly apply to both claimed inadequate and excessive verdicts) in mind, we review the present appeal.

¶ 9 Although the issue was given to the jury for its determination, it is patent that this was a case of inescapable liability. Appellant Beswick was a passenger in appellee Maguire's vehicle driven by Maguire on a two lane highway with a snow cover when he lost control of his vehicle causing a collision with another vehicle. Maguire pled guilty to a charge of driving under the influence of alcohol and, at trial, admitted that he was unfamiliar with the road handling characteristics of his own vehicle. The jury verdict is clear and unimpeachable. Thus, there is no basis for argument for compromise of damages on the basis of contested liability. *See, Boyd v. Hertz Corp.*, 219 Pa.Super. 488, 281 A.2d 679 (1971); *Elza v. Chovan, supra*. Nor, since the immediate injuries were clear cut and objectively demonstrable, is there any basis for finding that the liability issues and damage issues are intertwined . so as to detract from being the substantial cause of Beswick's immediate injuries. *See, Dougherty v. Sadsbury Township*, 299 Pa.Super. 357, 445 A.2d 793 (1982); *Mano v. Madden*, 738 A.2d 493 (Pa.Super.1999) (*en banc*).

¶ 10 The extensive expert testimony placed in evidence by plaintiff Beswick, leaves no room for doubt that he suffered severe and disabling injuries as an immediate result of the accident. He was found in the vehicle by emergency medical personnel in an unconscious state, bleeding from the nose, and showing signs of brain

injury. Taken to Crozer Chester Hospital, the brain injury was confirmed by tests. He was also found to be suffering from a fractured pelvis, and a fractured ankle which required surgical repair. His unconscious state continued for several days and, thereafter, he evidenced fever and disorientation. With some improvement, Beswick was transferred to Bryn Mawr Rehabilitation Hospital. He was placed on a comprehensive rehabilitation program for his severe brain injury which was described as diffuse, but demonstrated by evidence of hemorrhage of the right parietal region. He exhibited mood and personality changes, memory and attention span deficits, guilt and anxiety. The stays at Crozer Chester and Bryn Mawr were both in excess of three weeks. Upon discharge, Beswick continued to receive treatment for his functional deficits which were deemed to be permanent. The capstone of the damage evidence was in the testimony of Dr. Philip C. Spergel, a rehabilitative psychologist and vocational expert. Dr. Spergel interviewed Beswick almost exactly one year after the accident on February 7, 1996, for purposes of an evaluation. A series of tests were performed. The witness opined that as a result of the accident, Beswick could no longer function as a machinist principally because of his limited ability to concentrate. His assumption was that the patient had, in the past, been a journeyman machinist. The witness projected that, as a result of his incapacities, Beswick would suffer a future impairment of earning potential in the sum of $478,000, or more, if his work life expectancy was projected beyond age 65.

¶ 11 In addition, the jury had before it a stipulation that Beswick had incurred $4,640.75 in unreimbursed medical expenses. There was no substantial evidence of future medical expense. Also, Mrs. Beswick asserted a loss of over $5,000 in her income for time lost from work to care for her husband.

¶ 12 At the conclusion of the case, the veteran trial judge instructed the jury in a charge to the satisfaction of both parties.

¶ 13 Arrayed against the formidable case presented by appellant, appellee Maguire offered evidence through cross-examination and testimonial evidence which sought to diminish the strength of Beswick's proffer. There was credible evidence that Beswick had, to the time of trial, spent virtually his entire working career working for Maguire Products. Maguire Products is an enterprise which was established by Steven Maguire who had designed a product to meter color into injection molding machines. The business flourished and had 55 employees at the time of trial. Appellant Beswick was the best friend of Steven Maguire's son, Paul, from their early youth. It is fair to say that the relationship of Beswick to the Maguire family was one of benign paternalism. He often stayed at the Maguire home and, in fact, lived there for a period of time even after the Maguire children had moved out. It developed that Beswick would, as a youth, come into Maguire Products to do odd jobs with Maguire's children. He became a full-time employee in 1988. Although Beswick's job attendance was unsteady, he was given regular bonuses because of his special relationship with his employer. The work performed by Beswick was assembly and, later, shop work, but he was not a trained mechanic and did not possess skills necessary for that work. He was paid the entire time he was out of work following the accident, but later returned to his job. In October, 1995, Beswick left Maguire Products after making it known that he was going to sue Frederic Maguire as a result of the accident and being told that this would make things "uncomfortable" (although Beswick did not believe his employer meant that he, Mr. Maguire, would make things uncomfortable). There was also evidence that, while at Maguire Products, Beswick usually was transported to and from work since he was generally without an operator's license or a car of his own. Indeed, it

is a fact that on the evening of the accident Frederic was escorting Beswick on his way home after work and after three co-employees of Maguire had stopped at a tavern for liquid refreshments.

¶ 14 Appellant Beswick testified that he went as far as ninth grade, was not a good student, but later achieved a GED.

¶ 15 From the evidence, the jury could easily have concluded that appellant was not a skilled mechanic, and was not qualified to become a mechanic by trade; that he had made a good vocational recovery from the accident; and that he could have a career as an unskilled workman at Maguire's or some similar company for as long as he wanted. Any, or all, of these reasonable conclusions would serve to very seriously deflate the future loss of income estimates offered by witness Spergel.

¶ 16 Further deflation in the damage expectations could have been based upon Beswick's admission that he had suffered a previous head injury in 1983 when he fell off the hood of a moving car as well as two other lesser head injuries. Dr. Long, a neurologist who treated appellant at Crozer Chester, agreed that the past medical history included possible seizure disorder and closed head injury. The witness was unable to evaluate the gravity of the prior head injury due to the lack of records concerning the 1983 incident, although he confirmed evidence of previous attention deficit difficulties. Psychologist, James Jaep, Jr. had appellant as a patient at Bryn Mawr Rehabilitation Hospital, and also had a history of the previous auto accident with seizure noted and also some deafness. He agreed that it was difficult to assess the degree to which pre-accident deficits affected the patient's post-accident condition other than the conclusion that they were exacerbated. Appellant's evidence focused heavily on the closed head injury and offered little as to any disability due to his orthopaedic injuries.

¶ 17 The sum of the medical and psychological evidence as to the appellant's vocational skills is that the jury could readily conclude that a substantial portion of any present deficits are due to lack of native ability or previous accident experience. These considerations could reasonably have served to deflate or negate the estimated loss of future earnings calculations.

¶ 18 Our cases have long recognized that a jury may properly compromise claimed damages on the basis of preexisting conditions or other causes which might contribute to an injury or disability so as to affect the award of damages. *See e.g., Orsini v. Italian Line*, 358 F.2d 735 (3d Cir.1966); *Carroll v. Kephart*, 717 A.2d 554 (Pa.Super.1998); *Nudelman v. Gilbride*, 436 Pa.Super. 44, 647 A.2d 233 (1994); *Peck v. Haberle*, 434 Pa.Super. 132, 642 A.2d 509 (1994) *appeal denied*, 538 Pa. 673, 649 A.2d 674 (1994); *Gross v. Johns–Manville*, 410 Pa.Super. 486, 600 A.2d 558 (1991) *appeal denied*, 531 Pa. 654, 613 A.2d 559 (1992); *Krywucki v. Trommer*, 199 Pa.Super. 145, 184 A.2d 389 (1962); *Labbett v. Port Authority of Allegheny County*, 714 A.2d 522 (Pa.Cmwlth.1998).

¶ 19 As to the consortium claim of Christine Beswick, she was awarded a verdict of $5,000 which approximated, but did not equal, the stipulated amount that she claimed was lost as income for time she was out of work as a caregiver for her husband. The court correctly charged the jury on Mrs. Beswick's cause of action and we are furnished with no authority that a spousal claim for loss of consortium necessarily incorporates a consequent right to a claim for loss of earnings incurred while rendering spousal support to the injured marital partner. Also, since the consortium claim is derivative from the husband's claim, it is subject to the same compromises for lack of evidentiary integrity as the husband's claim.

¶ 20 Finally, in his brief on appeal, as in the trial court, appellant suggests that we should consider the final settlement negotiation figures – apparently as a yardstick to measure the propriety of the jury verdict.

As part of this, appellant furnishes his version of the final settlement offer, demand, and suggested settlement figure.[1] Appellant offers no authority for the consideration of such pre-trial negotiations in consideration of an inadequacy claim. Although raised in a slightly different context – alleged excessiveness of a verdict – we agree with our court's recent discussion as to the relevance of settlement negotiation evidence:

> During the court's discussion of the amount claimed in the complaint, the court made explicit reference to the demands which Ammon made during settlement discussions. The court stated "The plaintiff claimed damages in excess of $10,000; at settlement discussions on the morning of trial the plaintiff's demand ranged from $8,000 to $12,000. The disparity between these figures and the verdict amount is self-evident." Opinion, 2/8/85 at 9. It has long been established that an offer to compromise a claim, not accepted, cannot be introduced into evidence. *Durant v. McKelvey*, 187 Pa.Super. 461, 144 A.2d 527 (1958). Not only is settlement without litigation to be encouraged, but offers to compromise are not, in and of themselves, admissions of liability. *Smith v. Leflore*, 293 Pa.Super. 149, 437 A.2d 1250 (1981). To consider such a factor when determining the possible excessiveness of a verdict discourages the settlement of disputes. Plaintiffs will be dissuaded from making conservative settlement demands if they know that such demands will be used against them at a later stage in the proceedings. Of equal importance, it is entirely inappropriate to review a jury verdict based upon facts which, as a matter of law, were barred from jury consideration. The court should not have made reference to or considered Ammon's settlement demands.

1. The trial court correctly notes that these figures reflect only pre-trial opinion before

*Ammon v. Arnold Pontiac–GMC, Inc.*, 361 Pa.Super. 409, 522 A.2d 647, 650 (1987).

¶ 21 We have carefully considered all of the evidence and we conclude that the trial court did not abuse its discretion in refusing to find that the jury verdicts were inadequate so as to merit the grant of a new trial.

¶ 22 Judgment affirmed.

¶ 23 DEL SOLE, J. files a Dissenting Opinion, in which MUSMANNO, J. joins.

DEL SOLE, J., dissenting:

¶ 1 I agree with the Majority's statement of law governing inadequate verdicts. It is the application of these principles to the facts of this case with which I disagree.

¶ 2 From the Majority Opinion, we learn "that this was a case of inescapable liability" and "there is no basis for argument for compromise of damages on the basis of contested liability." Op. at 703. Further, I agree with the Majority in finding:

> The extensive expert testimony placed in evidence by plaintiff Beswick, leaves no room for doubt that he suffered severe and disabling injuries as an immediate result of the accident. He was found in the vehicle by emergency medical personnel in an unconscious state, bleeding from the nose, and showing signs of brain injury. Taken to Crozer Chester Hospital, the brain injury was confirmed by tests. He was also found to be suffering from a fractured pelvis, and a fractured ankle which required surgical repair. His unconscious state continued for several days and, thereafter, he evidenced fever and disorientation. With some improvement, Beswick was transferred to Bryn Mawr Rehabilitation Hospital. He was placed on a comprehensive rehabilitation program for his severe brain injury which was described as diffuse, but demonstrated by evidence of hemorrhage of the right

any evidence is introduced.

parietal region. He exhibited mood and personality changes, memory and attention span deficits, guilt and anxiety. The stays at Crozer Chester and Bryn Mawr were both in excess of three weeks. Upon discharge, Beswick continued to receive treatment for his functional deficits which were deemed to be permanent.

Op. at 703 & 704.

¶ 3 With stipulated special damages to Paul Beswick of $4,640.75, I am convinced that the award of $26,359.25 for pain, suffering and inconvenience, past, present and future is so woefully inadequate that "it bears no reasonable relation to the loss suffered by the plaintiff." *Kiser v. Schulte* 538 Pa. 219, 648 A.2d 1, at 4 (1994).

¶ 4 The Majority notes that the relationship between Appellant and Appellee, and Appellant's employment history would all serve to diminish Appellant's wage loss claim. Also, Appellant's previous medical history served to diminish Appellant's post-accident related claims. With these assessments, I agree. However, the amount awarded to Appellant, coupled with the award for loss of consortium to Appellant's wife solely of an amount equal to her stipulated wage loss, lead me to conclude that the verdict is the product of misapprehension or mistake on the part of the jury. This verdict should not be permitted to stand. Therefore, I must dissent.

¶ 5 MUSMANNO, J., joins.